492 A.2d 303

**Linda LASSITER–GEERS**

v.

**George Richard REICHENBACH.**

**No. 154, Sept. Term, 1984.**

Court of Appeals of Maryland.

May 14, 1985.

Thomas C. Ries, Baltimore (Ann M. Turnbull and Frank, Bernstein, Conaway & Goldman, Baltimore, on the brief), for appellant.

Myles F. Friedman, Baltimore (Joel H. Pachino and Friedman, Pachino & Garcia, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

We shall here hold that when a father and a mother fail to agree at birth and continue to disagree upon the surname to be given their child, the question is one to be determined upon the basis of the best interest of the child.

## I

The facts are not in dispute. Appellant Linda Lassiter-Geers and appellee George Richard Reichenbach formerly were husband and wife. They separated on or about June 1, 1980. Shortly thereafter they learned that Mrs. Lassiter-Geers was pregnant. She gave birth to a daughter, Jamie Lauren, on January 17, 1981. At that time Mrs. Lassiter-Geers gave their daughter her maiden name of Lassiter as a surname. She testified as to how she arrived at this decision:

"I did a lot of soul searching. First I spoke to an attorney, to let the attorney know what I planned to do. I spoke to my mother at great length. I spoke to a male friend who has two children, and I also spoke to a minister several times. The last time I spoke to him was

the day that Jamie was born. He came to the hospital to see us. He has four children, two sons and two daughters.

"1 wanted to do what was best for Jamie, to do what was in Jamie's best interest; and I feel that I was. I still do."

Reichenbach was not consulted. He said he did not find out about the child's surname until August 1981, some seven months later.

The parties were divorced a vinculo matrimonii by a decree of the Circuit Court for Baltimore County on March 30, 1982. Appellant was granted the right to resume her maiden name of Lassiter. In the answer filed by Reichenbach to the supplemental bill of complaint in that proceeding, he raised the issue of the surname of the child. When the matter came on for hearing before the court master the parties agreed that the issue of the proper surname of their child should be reserved for future determination. The master recommended this to the court. The decree specified "that the determination of the surname of the minor child of the parties be . . . reserved for future determination and further Orders of th[at] Court . . . ."

On April 9, 1984, Reichenbach filed a petition in the circuit court in the divorce proceeding in which, among other things, he pointed out that the divorce decree had reserved the issue of determination of the surname of the minor child and prayed that the court "order that the child assume the surname of [Reichenbach]." The matter came on for hearing before Judge DeWaters. He said that "the best test, as [he] s[aw] it, that has to be utilized, is what is in the best interests of the child." He went on to determine that in this particular case the best interest of the child would be for her to have the surname of her father. By the time of that hearing Mrs. Lassiter-Geers had married a gentleman by the name of Geers. She uses the surname Lassiter-Geers. She promptly appealed to the Court of Special Appeals. We issued a writ of certiorari on our own motion prior to consideration of this case by the interme-

diate appellate court in order that we might address the important public issue here presented. We find that the trial judge used the correct test and did not abuse his discretion in his determination. Hence, we shall affirm.

## II

■ Mrs. Lassiter-Geers first argues that the trial court was without jurisdiction to pass the decree at issue. She says in support of this contention,

"Maryland has enacted legislation, which is now implemented by Rules of Procedure, authorizing the change of a person's name by judicial proceeding. *See* Md.Rules BH 70–75. The proper method for Appellee to present the change of name issue to the Court would have been to comply with the BH Rules and formally file a Petition for Change of Name."

She speaks of the trial court in this instance as a "divorce court" and "the absence of any provision authorizing a Maryland divorce court to consider this issue." She errs. The issue of divorce is simply one of the matters a circuit court is authorized to consider. It is no more proper to consider or call it a "divorce court" and its jurisdiction as so limited than it is when a circuit court is considering a tort to call it a "tort court" and to regard its jurisdiction as limited to torts.[1]

■ The divorce action was, of course, in equity. The issue of the proper surname for the child was raised in that proceeding. Numbers of our cases have held that once a court has obtained jurisdiction over an equitable action it retains that jurisdiction to adjust and determine all rights of the parties to the proceeding. Thus, when a court has assumed such jurisdiction, ordinarily it will retain it for all

---

1. In this regard see Maryland Code (1974, 1984 Repl.Vol.) § 3–603(b), Courts and Judicial Proceedings Article, stating, "A court of equity sitting in an action for divorce ... has all the powers of a court of equity ..." and *Winston v. Winston,* 290 Md. 641, 431 A.2d 1330 (1981). Section 3–603(b) was replaced by Code (1984) § 1–203(a), Family Law Article, to similar effect as of October 1, 1984.

purposes, deciding all the issues raised by the subject matter of the dispute between the parties and awarding complete relief, even as to matters over which it would not have taken jurisdiction originally, although the principle will not be extended to an unrelated controversy in which any of the parties to the original litigation is involved. *See, e.g., C.W. Jackson & Associates v. Brooks,* 289 Md. 658, 666, 426 A.2d 378, 382 (1981), *Aiello v. Aiello,* 268 Md. 513, 518, 302 A.2d 189, 191 (1973), and cases cited in each. The reason for this was explained by the Court long ago in *Keighler v. Ward,* 8 Md. 254 (1855):

> "[A] jurisdiction once rightfully asserted by a court of equity, and which would lead to a settlement of all the questions which might arise out of the subject matter in controversy, will exclude all jurisdiction over it, by other courts, for similar purposes, and the reason of this, which is to prevent a number of conflicting proceedings about the same thing, is wise and just." 8 Md. at 266.

### III

Mrs. Lassiter-Geers wishes to regard this as a change-of-name case. She argues that under our holding in *West v. Wright,* 263 Md. 297, 283 A.2d 401 (1971), the change of name of a minor child is warranted only in extreme circumstances. She contends that the trial court improperly changed the surname of the child from Lassiter to Reichenbach. As we shall develop, because the parents did not agree upon a surname for the child, she was without a surname. Hence, we do not see this as a change-of-name case but as a case to determine what is the proper surname of the child in question.

In *West,* 263 Md. at 300, 283 A.2d at 402, Judge Digges observed for the Court, quoting *Application of Yessner,* 61 Misc.2d 174, 304 N.Y.S.2d 901, 903 (1969), " '[T]he father has a natural right to have his son bear his name and ... the court should not endeavor to interfere with the usual custom of succession of paternal surname nor foster any unnatural barrier between father and son.' " The tradition-

al view has been that a child bears the surname of his father. *See, e.g., Jech v. Burch,* 466 F.Supp. 714, 717 (D.Hawaii 1979); *Laks v. Laks,* 25 Ariz.App. 58, 60, 540 P.2d 1277, 1279 (1975); *In Re Marriage of Schiffman,* 28 Cal.3d 640, 641, 169 Cal.Rptr. 918, 919, 620 P.2d 579, 580 (1980); *Burke v. Hammonds,* 586 S.W.2d 307, 309 (Ky.App. 1979); *Secretary of the Commonwealth v. City Clerk of Lowell,* 373 Mass. 178, 189, 366 N.E.2d 717, 725 (1977); *Kay v. Bell,* 95 Ohio App. 520, 524, 121 N.E.2d 206, 208 (1953); *Roberts v. Mosier,* 35 Okla. 691, 695, 132 P. 678, 680 (1913); *Petition for Change of Name of Harris,* 160 W.Va. 422, 427, 236 S.E.2d 426, 429 (1977); 57 Am.Jur.2d *Names* § 2 at 276 (1971); 65 C.J.S. *Names* § 3a (1966). The first name of a child has been as selected by the child's parents. *Smith v. United States Casualty Co.,* 197 N.Y. 420, 423, 90 N.E. 947, 948 (1910); *Laflin & Rand Co. v. Steytler,* 146 Pa. 434, 442, 23 A. 215, 217 (1892); 57 Am.Jur.2d *Names* § 3 at 277. As to the issue before the Court *see generally* Annot. 92 A.L.R.3d 1091 (1979).

■ On the record in this case we need not decide whether any right which a father had by prior custom or law to have a child bear his surname is eliminated by the adoption of Md. Declaration of Rights art. 46, providing that equality of rights under the law shall not be abridged or denied because of sex. For the purposes of our decision we shall assume, without deciding, that such is the case. Certainly, however, in that situation neither parent has a superior right to determine the initial surname their child shall bear. See to that effect *Application of Saxton,* 309 N.W.2d 298, 301 (Minn.1981). In *Jech,* 466 F.Supp. at 719, the court observed, "[A] proper interpretation of Anglo-American political and legal history and precedent leads to the conclusion that parents have a common law right to give their child any name they wish ...." "In the absence of a statute to the contrary, a person may adopt any name by which he wishes to become known, as long as he does so consistently and nonfraudulently." *Hardy v. Hardy,* 269 Md. 412, 415, 306 A.2d 244, 246 (1973). To similar effect

see *Stuart v. Board of Elections,* 266 Md. 440, 446–47, 295 A.2d 223, 226 (1972), and *Romans v. State,* 178 Md. 588, 597, 16 A.2d 642, 646 (1940). It follows, therefore, that parents have the right jointly to adopt any surname for their child they wish to adopt, just as they determine what shall be a child's given name.

■ This must be a joint action, however. There was no agreement between the parties here. Mrs. Lassiter-Geers determined at birth to give the child her own maiden name as a surname. Not only was the father not consulted, he was not even aware of this until months later. As late as the hearing before the master in the divorce proceeding the parents had been unable to agree upon a surname for their child. It is apparent that a dispute continues to exist as to the surname. That is the basis of this case. It follows, therefore, that what the chancellor was asked to determine was not whether there should be a change of surname for this child but what the surname for the child should be. In *Schiffman,* 28 Cal.3d at 647, 169 Cal.Rptr. at 922, 620 P.2d at 583 (1980), the court observed, "[T]he sole consideration when parents contest a surname should be the child's best interest." To similar effect see *Fuss v. Fuss,* 372 Mass. 64, 69, 368 N.E.2d 271, 274 (1977). We agree. This is in line with our holding relative to change of name in *West,* 263 Md. 297, 283 A.2d 401.

■ As we have already pointed out, the chancellor determined that the test of what is in the best interest of the child was the one to be applied. After making that determination he said orally from the bench in reaching his decision, "[T]he mother has created a situation whereby there are three possible names." He pointed out that the mother "and the child are living in the home presently where the name Geers is utilized because the mother has remarried. The child's name is Lassiter." He said that the child is young and that it is not too late to change the name to change that situation. He specified:

"The reason I feel it is not in the best interest of the child, and the child is a young child, taking into consideration the age of the child and the effect of the name change at this point, is because as this child gets older, starts going to school, making friends and so on, the child is going to find herself in a situation where someone says, what is your name. My name is Lassiter. The person says, well, your mother's name is Geers. I guess your father's name is Lassiter. What is your father's name?

"My father's name is Reichenbach. Where did Lassiter come from?

"Some people and a lot of people may well infer this child was born out of wedlock. Where did Lassiter come from? She was not married to anybody named Lassiter. The father's name is Reichenbach.

"It just doesn't seem right to me that it puts the child in a very good position at all. As far as the child is concerned it lends itself to the child being put in an embarrassing position; and I don't think that that is in the best interest of the child.

"Someone says, well—the child says to the person, my name is Reichenbach—I mean my father's name is Reichenbach. So therefore, the person who she gives that answer to can't help but wonder, well, why is the name not Reichenbach. Why is the name Lassiter? Is the child telling the truth because the child is trying to disguise something? It just doesn't make sense that that is in the best interest of this child to go through life under those circumstances with three possible names; and I don't think that that should exist. I don't think it is in the best interest of the child." [2]

---

**2.** Counsel for the appellant, in response to questions from the Court, stated emphatically more than once that the appellant did not desire a remand in this case for the purpose of having the chancellor consider any other matters which might bear upon the issue of the best interest of the child.

We believe the chancellor properly applied the best interest test to the facts of this case.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.