538 A.2d 779

**Theresa Marcianna LAWRENCE, Individually, etc.**

v.

**Edwin LAWRENCE, Jr.**

**No. 1041 Sept. Term, 1987.**

Court of Special Appeals of Maryland.

March 8, 1988.

J. Michael McLaughlin, Jr., Towson, for appellant.

Thomas C. Ries (Frank, Bernstein, Conaway & Goldman, on the brief), Baltimore, for appellee.

Argued before WILNER, KARWACKI and POLLITT, JJ.

KARWACKI, Judge.

Theresa Marcianna Lawrence, the appellant, filed a petition on June 14, 1985, asking the Circuit Court for Baltimore County to change her surname from that of her former husband, Lawrence, to her maiden name, Earhardt. In the same petition she requested that the surnames of the parties' two minor children be changed to a hyphenated name, Earhardt–Lawrence. Appellee, Edwin Lawrence, Jr., opposed the change of his children's surnames, although he offered no objection to Mrs. Lawrence's resuming her maiden name. A hearing on the petition was held on March 16, 1987, before Judge A. Owen Hennegan. In a memorandum opinion and order filed on March 30, 1987, the court granted the request for appellant's name change but declined to change the children's surname, concluding that it would not be in their best interest.

Appellant filed a timely appeal and asks this Court:
I.   Did the court abuse its discretion in refusing to permit appellant to change the name of the parties' minor children to reflect the surnames of both parents.
II.  Did the court abuse its discretion in refusing to permit appellant to call the parties' minor children as witnesses.

I.

■ The parties were married in November of 1972. Their children, Jennifer Lynn and Jessica Anne, were respectively five years old and three years old when appellant and appellee were divorced in July, 1980. Both children were given their father's surname at birth and have used it

since. Appellant adopted appellee's surname at the time of their marriage and used it consistently until her petition to resume her maiden name was granted in the instant case.

At the time of her divorce from appellee, appellant was granted custody of their children with the right of reasonable visitation reserved to the appellee. Appellee has diligently paid his contribution to the support of his daughters, which was ordered at the time of the divorce. Additionally, he has complied with the separation agreement he made with appellant at that time by paying one-half of the cost of his daughters' private school education and in assuming any uninsured medical expenses of his children.

Appellee testified that he spoke with his children by telephone every other day and visited them approximately once a month. He explained that he remarried in 1981 and lives with his present wife, their infant son, and her teenaged son in a small two bedroom home which makes overnight visits to his home by his daughters impractical. Moreover, his weekday work hours extend from 8:30 a.m. until midnight in his pursuit of two full time jobs.

The parties' daughters have been known by the name of Lawrence all of their lives by their friends, neighbors, and teachers. Their medical and school records are in that name. Also, the children frequently enjoy the company of their paternal grandparents with whom they share the surname Lawrence. Although the children do have some relatives who bear the name Earhardt, appellant did not know where those persons resided and the children have never known them.

Appellant contends that the court abused its discretion in denying her petition to change the name of her children to a hyphenated form reflecting both parents' surnames, because as the custodian of the children, their care is principally committed to her. Moreover, she asserts that Article 46 of the Declaration of Rights of the Constitution of

Maryland[1] guarantees her the right to have her heritage reflected in the childrens' surname, citing *Lassiter–Geers v. Reichenbach*, 303 Md. 88, 492 A.2d 303 (1985). Her reliance on that case is misplaced.

In *Lassiter–Geers*, the Court of Appeals was presented with a dispute between parents who could not agree on the initial surname to be given their child. Those parents had not learned of the wife's pregnancy until after they had separated. When the child was born, the wife, without consulting her husband, gave the child her maiden name of Lassiter as a surname. The husband learned of this seven months later and raised the issue of the propriety of this unilateral decision by his wife in the proceedings which resulted in their absolute divorce. At the time the divorce decree was entered, the court reserved the issue concerning the surname of the child of the parties for future determination. Two years later, the father of the child filed a petition in the divorce proceedings praying that the court order the child's surname to be that of the father. After a hearing, the trial court determined that it was in the best interests of the child for her to have the surname of the father. In affirming that decision, the Court pointed out that this was not a dispute over whether a child's surname should be changed from the one her parents jointly chose for her initially. Rather, because the parents had never agreed upon their child's surname, she never had been given one. The Court then held that where parents fail to agree on the surname which their child should bear, a court called upon to resolve their dispute should do so upon the basis of the best interest of the child. The *Lassiter–Geers* Court assumed without deciding that in making the decision based upon the child's best interest the court, after the adoption of Article 46 of the Declaration of Rights, was prohibited from relying on any "right which a father had by

---

1. Maryland's "Equal Rights Amendment", Article 46, provides: "Equality of rights under the law shall not be abridged or denied because of sex." This Article was ratified by the electorate at the general election held on November 7, 1972.

prior custom or law to have a child bear his surname." *Id.* at 94, 492 A.2d 303. The Court then went on to decide that the trial judge had not abused his discretion in giving the child the father's surname. In doing so, the Court approved the application of the best interest test by the trial judge, who had reasoned that if the child were given the surname Lassiter, she likely would be confused and embarrassed when questioned as to why, since the male head of her household used the surname Geers and her mother used the surname Lassiter–Geers, her name was Lassiter.

Unlike *Lassiter–Geers*, the case *sub judice* presents an attempt to change the surname of children from the one they have used since birth. The seminal case in this State dealing with that issue is *West v. Wright*, 263 Md. 297, 283 A.2d 401 (1971). In *West*, the mother of two sons petitioned to change their surname from that of their father to that of her present husband. The father of the children objected. The parties were divorced 10 years previously, at which time custody of their sons was granted to the mother. The father had remarried and lived 300 miles from the mother and his sons. Because of this and, additionally, because he worked six days a week and lived in a small house which could not accommodate them, the father was only able to spend two or three days a year with his sons. Despite the lack of frequent visits, however, the father had faithfully contributed to his sons' support and had maintained contact with them by sending them presents on their birthdays and at Christmas.

In reviewing the trial court's order granting the name change, the Court of Appeals emphasized that any change of surname of a minor child should only be made where compelling reasons therefor have been demonstrated. What constitutes such circumstances must be decided on an individual case basis with the court's focus being on the child's best interest. The Court emphasized that the father in *West* had not been guilty of any misconduct which might make the continued use of his surname by his children shameful or disgraceful, nor had the father willfully aban-

doned or surrendered the natural ties between himself and his children.

When dealing with the change of a child's surname, courts from other jurisdictions agree that the proponent of the change bears the burden of demonstrating that the name change promotes the best interest of the child. *E.g.*, *Application of Saxon*, 309 N.W.2d 298 (Minn.1981), rejecting a change of the surname of seven and nine year old children from that of father to a hyphenated name reflecting mother's maiden surname which she resumed after her divorce and the surname of father; *Burke v. Hammonds*, 586 S.W.2d 307 (Ky.App.1979); *Wearn v. Wray*, 139 Ga. App. 363, 228 S.E.2d 385 (1976); *Laks v. Laks*, 25 Ariz.App. 58, 540 P.2d 1277 (1975).

In the instant case, Judge Hennegan analyzed the evidence before him with a proper view to what was in the best interest of the children. They had used their present surname for 11½ years and 9½ years, respectively. Their father had diligently and fairly contributed to their support since his divorce from their mother. He had maintained his natural ties with his daughters, notwithstanding the constraints of his current financial status. Finally, there was no suggestion of any misconduct on the part of the father which would cause embarrassment to his daughters in the use of his surname.

The only problem that the mother contemplated in the children's continued use of their present surname was the possibility that she would have to explain to others the difference between her resumed maiden surname and their surname. As in *West v. Wright, supra*, [263 Md.] at 302–03, 283 A.2d 401, we believe that any such potential embarrassment to the children's custodial parent "is clearly outweighed by the desirability of maintaining some bond" between the noncustodial parent and his children. This being the case, and there being no indication that any preference was accorded the father based upon his sex, we hold that the trial judge did not abuse his discretion in declining to change the surname of the children.

## II.

■ Contending that the court abused its discretion in refusing to hear from the parties' minor children on the proposed change of their surname, appellant alleges that she had an agreement with the court that the children would remain in school "unless and until it was decided they would be called." This "agreement" is not evident from the record. On cross-examination, appellee stated that on an earlier occasion, when the name change proceedings were halted, the girls "were very glad" that their names were not going to be changed. Appellant then requested the court to interview the girls as to their preference. The children were not present in court, and the court refused to delay the proceedings until they could be brought from school and produced before the court.

This court addressed the question of the extent to which a minor child's wishes with regard to a proposed change of his or her surname should be considered in *Hall v. Hall*, 30 Md.App. 214, 226–27, 351 A.2d 917 (1976). We concluded that the same weight should be given in a name change determination as that to be given in a custody proceeding; that is, the preference of an "intelligent child who has reached the age of reason" should be considered but is not controlling. *Hall v. Hall*, 30 Md.App. at 214, 351 A.2d 917.

In disputed custody cases it is well-settled that the court has the discretion both as to whether to consult the child and, if so, as to the weight to be given his or her preference as to a custodian. *Wilhelm v. Wilhelm*, 214 Md. 80, 84, 133 A.2d 423 (1957); *Ross v. Pick*, 199 Md. 341, 353, 86 A.2d 463 (1952); *Young v. Weaver*, 185 Md. 328, 334, 44 A.2d 748 (1945); *Roberts v. Roberts*, 35 Md.App. 497, 508–09, 371 A.2d 689 (1977). The Court of Appeals has stated that the purpose of consulting the child's preference as to a custodian is not because of the child's "legal right to decide the question of custody," but to assist the court in its exercise of discretion. *Ross v. Pick, supra*, [199 Md.] at 353, 86 A.2d 463.

As to the circumstances of the instant case, appellant's failure to have the children present at the time of trial required the court to grant a continuance if it was to interview the children. The grant or denial of a continuance is in the discretion of the trial court and, unless arbitrary, its action in this respect will not be disturbed on appeal. *Greenstein v. Meister,* 279 Md. 275, 294, 368 A.2d 451 (1977); *Butkus v. McClendon,* 259 Md. 170, 173, 269 A.2d 427 (1970); *Reaser v. Reaser,* 62 Md.App. 643, 648, 490 A.2d 1315 (1985). In his memorandum opinion, the trial judge did not indicate that his decision to deny the requested change of the children's surname was based on appellee's testimony on cross-examination as to the preference his daughters had expressed on an earlier occasion. We perceive no abuse of discretion by the trial judge in declining to continue the proceedings for the purpose of interviewing the children as to their preference of a surname.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.