847 A.2d 445

**Dea Michelle DORSEY**

v.

**Brendin D. TARPLEY.**

**No. 95, Sept. Term, 2003.**

Court of Appeals of Maryland.

May 6, 2004.

Scott L. Little (The Law Offices of Scott L. Little, on brief), Upper Marlboro, for appellant.

Brian D. Wise (Fait & Wise, LLP, on brief), Rockville, for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE, JJ.

HARRELL, Judge.

Alexander Craig Dorsey ("the Child") was born on 5 September 2000 in Montgomery County, Maryland. His name appeared as such on the birth certificate. The Child's biological parents were not married at the time, nor did they marry subsequently. On 14 January 2003, Brendin D. Tarpley ("the Father"), Appellee, filed in the Circuit Court for Montgomery County a Petition for Name Change seeking to change the surname of the Child from Dorsey to Dorsey–Tarpley. Appellant, Dea Michelle Dorsey ("the Mother"), opposed the Petition.

A hearing was held on 2 April 2003. Counsel argued, but no evidence was adduced. The Petition was granted and an Order for Change of Name was entered on 15 April 2003, changing the Child's name from Alexander Craig Dorsey to Alexander Craig Dorsey–Tarpley. The Mother, on 22 April 2003, filed a Motion for New Trial or, in the alternative, to Alter or Amend Judgment. The Circuit Court denied the motion, and the Mother appealed.[1] This Court, on its own initiative and before any further proceedings in the Court of Special Appeals, issued a writ of certiorari. 378 Md. 617, 837

---

1.  As directed in Maryland Rules 2–201 and 15–901, the case in the Circuit Court was captioned "In Re: Alexander Craig Dorsey." On appeal, the parties and various court administrative personnel inconsistently captioned the case as either *"Dea Dorsey v. Alexander Craig Dorsey"* or *"Dea Dorsey v. Brendin Tarpley."* We believe, according to Rule 8–111(a), that the more appropriate caption on appeal is as we reflect on the cover sheet of this opinion.

A.2d 928 (2003). Appellant framed the following issue for appellate review:

> Whether the lower court erred in granting the father's petition to change the child's surname since the parents had agreed prior to the child's birth [to] his surname and the father failed to meet his burden of proof that the change was in the best interest of the child and that extreme circumstances warranted a change? [2]

## I.

It is obvious that Alexander's parents presently disagree over the proper surname for him. Apparently they also disagree about whether there was an agreement regarding his surname at his birth. Unfortunately, despite the latter disagreement, there was no fact-finding by the hearing judge on this pivotal factual dispute.

The Mother contended that:

> [e]ven though the Father was the biological father of the Child, they had agreed prior to the Child's birth that he

---

2. Although presenting a single question for review, Appellant's brief quixotically offers four assertions under a section entitled "Questions of Fact Presented." Three of these assertions break into its constituent parts the question for review and suggest conclusions favorable to Appellant, while the fourth statement claims "the father's petition should be denied due to the doctrine of laches." After carefully reading Appellant's brief, we found only a single, short reference to the doctrine of laches buried in a paragraph on page 11. A review of the Record Extract revealed no argument or assertion of laches, as such, before the Circuit Court.

The scope of appellate review is governed by Maryland Rule 8–131. That rule provides in part: "(a) Generally.—... Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Our review of "arguments not raised at the trial level is discretionary, not mandatory." *State v. Bell*, 334 Md. 178, 188, 638 A.2d 107, 113 (1994). As this case is being remanded for other reasons, Appellant will have the opportunity to raise and flesh out in the Circuit Court her new argument about the doctrine of laches; thus, we shall not address it here.

would [bear] the last name of the Mother, irrespective of her marital status. The Father had acknowledged their agreement at the time their son was born. He was present at the birth and acquiesced to the Mother's maiden name as the Child's surname on the birth certificate. The Father never contested the Child's surname until he was two and a half years old.

Specifically, in her opposition to Petition for Name Change filed in the Circuit Court, Appellant alleged that the Father "signed the minor child's birth certificate and acknowledgment of parentage with this understanding in mind at the time the child was born."

To the contrary, the Father contended that:

[a]t the time of the child's birth, [the Mother] insisted that [the Father's] last name (Tarpley) would only be given to their son if [the Father] promised to marry [the Mother].

For a myriad of difficult and emotional reasons, this promise could not be made by [the Father] at that time. The parties could not agree on the last name for their child, emotions were high and members from both sides of the family were present. No agreement could be reached on the last name. Over [the Father's] objection, [the Mother] used her last name (Dorsey) as the child's last name.

The Mother also argued in her trial court pleadings and papers that the Father was happy with the Child's surname until the Child was two and half years old and that the name modification was sought to harass, annoy, and embarrass her. In addition, she pointed to bank accounts and assets, such as stocks, bonds, and life insurance, which had been established previously with the Child's surname of "Dorsey".

At the hearing in the Circuit Court no witnesses testified and no documentary evidence was offered. The hearing judge, at the outset of the 2 April 2003 hearing, questioned the attorneys about the case, based on the pleadings, and what they contended represented a disposition in the best interests of the child. The hearing, therefore, proceeded as oral argument by counsel. Approximately two-third's of the way

through the comparatively short proceeding, the Father's attorney stated:

"And what I would like to reiterate—*and if Your Honor wants to resolve the factual differences in this case, then I think perhaps the Court would want to hear testimony on it.*

"But there is a difference of opinion as to whether or not there was an agreement reached when the child was born on what the child's last name would be. They say there was an agreement. My client says there was not an agreement. From our position, if there had been an agreement, we would not be here today."

(Emphasis added). Unwilling to press the point about adducing evidence in support of his representations, the Father did not mention again the notion of receiving evidence. The Mother likewise did not press this point. The court apparently did not recognize any need to resolve the apparent evidentiary dispute. The hearing proceeded with more argument by counsel, leading to the court's announcement of its oral ruling.

The hearing judge concluded that it would best serve the interest of the Child to allow the name change. He reasoned that, although the law states that the court should be reluctant to change a name, in this Child's case:

"[H]e is not in school yet. He is young, and it is a name that he is going to use the rest of his life. And I don't think it goes back to whether there was or was not an agreement when this child was born. . . . But the bottom line on this is that . . . if I allow him the addition and the change of name—and it is really an addition of a name—then both parents are represented. And there is some appeal to me— although certainly counsel's argument is sound that most people have one family name. But on the other hand, here in a circumstance where there is at least a separation, the child should at least carry the tradition of both families.

"And it really comes down to how you all as parents handle this child the rest of his life, and I don't think, frankly, in the long run, whether I do this or don't do it, it is

going to have great impact on his ultimate well-being. But I do believe that it is in his best interest to carry the name of both parents under the circumstances where there is a separation.

"But as I told you before, I am one judge that is asked to make a decision. I have made it, I guess based upon what I believe is in the best interest of the child and what factually is described to me, but it is not a decision that is the same decision that some other judge might not make."

The trial judge based his decision on the young age of the Child and, when the parents are separated, the Child's general interest in having the name of both parents. The Mother contends on appeal that the hearing judge was in error in concluding that these circumstances alone justified a change of name. For reasons we shall explain, we shall vacate the judgment and remand for an evidentiary hearing and fact-finding before the court may decide the case.

## II.

■ In general, parents are said to enjoy the right jointly to adopt any surname for their child they wish to chose, "just as they determine what shall be a child's given name." *Lassiter–Geers v. Reichenbach*, 303 Md. 88, 94–95, 492 A.2d 303, 306 (1985). Neither parent, however, "has a superior right to determine the initial surname their child shall bear." *Id.*

■ Unlike in the case where no initial surname is given a child at birth, the rule in a change of name case is to "look at what is in the best interests of the child before determining if a name change is warranted." *West v. Wright*, 263 Md. 297, 299, 283 A.2d 401, 402 (1971), and cases cited therein. Other than in the case of adoption proceedings, there is a presumption against granting such a change except under "extreme circumstances." *Id.*

We have said that there are two paramount factors to consider when determining the existence of "extreme circumstances." First, the court is to consider any evidence of misconduct by a parent that could make the child's continued

use of the parent's surname shameful or disgraceful. *West,* 263 Md. at 300, 283 A.2d at 403. Second, the court is to consider whether the parent wilfully abandoned or surrendered his or her natural ties to the child. *Id.*

■ Although the parties in the present case pled and argued a factual dispute as to whether a consensus existed as to the Child's surname at birth, there was no effort made by the hearing judge to resolve this dispute. Based on the virtual absence of a proper evidentiary record, coupled with the absence of judicial fact-finding, this case may not be categorized for analysis at this stage as either a "no initial name" or a "change of name" case. The parties must adduce evidence in support of their respective factual contentions and, assuming that admissible evidence presents the dispute the parties argue existed at the Child's birth, the Circuit Court needs to resolve whether such an agreement existed between the Mother and Father at birth, i.e., to give the Child the surname of Dorsey. Relevant evidence bearing on that, it seems to us, might be found in, among other places, the presence or absence of the Father's signature on the birth certificate or so-called "acknowledgment of parentage," the Mother's testimony, the Father's testimony, and/or the testimony of any relatives or other witnesses who were present during any discussion about naming the Child at birth.

■ If there was an agreement to name the Child at that time, then, under our caselaw, the petitioning parent, the Father in this case, must satisfy, by admissible evidence, the "extreme circumstances" standard in order to generate a prima facie case for the name change he seeks. *West,* 263 Md. at 300, 283 A.2d at 403. In "change of name" cases, as noted previously, abandonment and serious misconduct disgracing an existing surname are of paramount importance because "they epitomize the sort of exceedingly negative behavior by a parent that will justify changing the child's surname, when the parents gave the child that parent's surname at birth." *Schroeder v. Broadfoot,* 142 Md.App. 569, 584, 790 A.2d 773, 782 (2002). The focus in Maryland "change of name" cases

involving minors is often on the "extreme circumstances" of profoundly bad parental behavior. No profoundly bad behavior by the Mother has been alleged yet in the present case.

If there was no agreement regarding the name of the Child at birth, then, under our caselaw, the Father must demonstrate that the desired name change is in the Child's best interest. *Lassiter–Geers,* 303 Md. at 95, 492 A.2d at 307 (when there is no agreement between the parties about what the initial surname of a child should be, the test is what is in the best interest of the child). When parents have not agreed upon their child's surname, there are a multitude of factors that usually are considered in deciding what is in the child's best interest. While these factors also may include abandonment and serious misconduct, these two touchstones are not primary or determinative in the analysis.

In *Lassiter–Geers,* we adopted a pure best interests standard for "no initial name" cases. *Lassiter–Geers,* 303 Md. at 94, 492 A.2d at 306. The factors to consider, when they exist and are appropriate in a given case, in deciding what surname will serve the best interests of the child are: 1) the child's reasonable preference, if the child is of the age and maturity to express a meaningful preference; 2) the length of time the child has used any of the surnames being considered; 3) the effect that having one name or the other may have on the preservation and development of the child's mother-child and father-child relationships; 4) the identification of the child as a part of a family unit; 5) the embarrassment, difficulties, or harassment that may result from the child's use of a particular surname; 6) misconduct by one of the child's parents disparaging of that parent's surname; 7) failure of one of the child's parents to contribute to the child's support or to maintain contact with the child; and 8) the degree of community good will or respect associated with a particular surname. *Schroeder,* 142 Md.App. at 588, 790 A.2d at 785, and cases cited therein.

In the present case, the hearing judge concluded that he did not "think it goes back to whether there was or was not an

agreement when this child was born." He was mistaken. The hearing judge then based his decision to grant the change of the Child's surname on the young age of the Child and the Child's general interest in having the name of both parents because the parents were not living together. This is a misapplication of the law. Accordingly, we shall vacate the court's order and remand the case for further proceedings not inconsistent with this opinion. If, based on the evidence, it is found that there was no parental mutual agreement to name the child "Dorsey" at birth, the Circuit Court should be guided by the appropriate best interest of the child factors set out above. If the court determines, however, that an agreement existed at birth, the court, before granting a name change, must be satisfied that "extreme circumstances" justify that decision. In any event, an evidentiary hearing and fact-finding by the court are necessary before that decision is ripe to be made.

**DECREE OF 2 APRIL 2003, CHANGING THE CHILD'S NAME TO ALEXANDER CRAIG DORSEY–TARPLEY VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**