*In the Matter of Bodhi Sico Becker*, No. 0332, Sept. Term 2024, Opinion filed on May 2, 2025, by Berger, J.

CHILD SURNAME CHANGE – NO NAME CASE – STANDARD

When the parents of a child did not mutually agree to that child's name at the time of birth, courts consider this a "no name" case. In these cases, rather than changing the child's name, the court is tasked with determining the proper surname of the child. Because both parents have the right jointly to adopt any surname for their child they wish to adopt, neither party bears a burden of proof, and the court must conduct a pure best interest of the child analysis. This test alone guides the determination.

CHILD SURNAME CHANGE – CHANGE OF NAME CASE – STANDARD

When the parents of a child agreed to that child's name at the time of birth, courts consider this a "change of name" case. In these cases, neither parent has a superior right to determine the initial surname their child bears, and there is a presumption against granting such a change except under extreme circumstances. A court, therefore, must engage in both a best interest analysis and, even if the name change is in the child's best interest, continue to an extreme circumstances analysis before approving any change to the child's present name. Neither test is independently sufficient to support the name change. The challenging parent bears the burden of proving that extreme circumstances warrant the change.

CHILD SURNAME CHANGE – WHETHER PRIOR AGREEMENT EXISTS

In determining whether such an agreement exists, the court should look at the facts surrounding the initial naming of the child, including, but not limited to, whether both parties were present at the birth, who signed the birth certificate, acknowledgement of parenting, or other legal documents bearing the given name, and when the name became known to the challenging party. The court should also consider testimony of the parents, other relatives, or witnesses who were present during discussions about naming the child at birth.

CHILD SURNAME CHANGE – BEST INTEREST OF THE CHILD REVIEW

When considering the appropriateness of a surname change, the court should consider the following factors when assessing the best interest of the child: (1) the child's reasonable preference, if the child is of the age and maturity to express a meaningful preference; (2) the length of time the child has used any of the surnames being considered; (3) the effect that having one name or the other may have on the preservation and development of the

child's mother-child and father-child relationships; (4) the identification of the child as a part of a family unit; (5) the embarrassment, difficulties, or harassment that may result from the child's use of a particular surname; (6) misconduct by one of the child's parents disparaging of that parent's surname; (7) failure of one of the child's parents to contribute to the child's support or maintain contact with the child; and (8) the degree of community good will or respect associated with a particular name.

SURNAME CHANGE – EXTREME CIRCUMSTANCES REVIEW

In a change of name case, the court should consider whether the following extreme circumstances exist to warrant such a change: (1) whether there is proof that the parent whose name the child bears has engaged in serious misconduct that adversely affects the best interest of the child; and (2) whether the parent whose name the child bears has willfully abandoned the child and severed natural ties. Additional extreme circumstances may be considered if such circumstances are shown to adversely affect the child. Minor instances of embarrassment or clerical mix-ups do not rise to the level of extreme circumstances.

Circuit Court for Montgomery County
Case No. C-15-FM-23-006263

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 332

September Term, 2024

_____

IN THE MATTER OF BODHI SICO BECKER

_____

Graeff,
Berger,
Kehoe, Christopher B.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed: May 2, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Bodhi Sico Becker ("Bodhi") was born in 2020 to Colleen Sico ("Ms. Sico") and Ashley Becker ("Ms. Becker"). While Ms. Sico was pregnant, Ms. Becker and she discussed how they would name their child. According to Ms. Sico, the couple agreed that if they got married, the baby would take Becker as a last name. They included Sico as the baby's middle name to maintain his connection to Ms. Sico's surname. When Bodhi was born, although Ms. Sico and Ms. Becker remained unmarried, they both signed the baby's birth certificate naming him Bodhi Sico Becker.

In 2022, the couple separated, having never been married. Following their separation, Ms. Sico raised the issue of Bodhi's name, seeking to hyphenate his last name to include both the women's surnames. Ultimately, the couple agreed to discuss a potential name change with their parent coordinator following the completion of a custody agreement. Unable to reach an agreement -- primarily due to differences regarding Bodhi's middle name -- Ms. Sico filed a petition seeking to change Bodhi's name to Bodhi Joseph Sico-Becker. Following a hearing before the Circuit Court of Montgomery County, the court determined that Ms. Sico and Ms. Becker had agreed on Bodhi's name at the time of his birth and, applying both the best interest of the child standard and the extreme circumstances standard, denied Ms. Sico's petition.

On appeal, Ms. Sico presents two questions for our review, which we rephrase slightly as follows:[1]

---

[1] Ms. Sico phrased her original questions presented as follows:

    I.      Did the Circuit Court err when it found that there as an initial agreement on the minor child's name?

I. Whether the circuit court erred by finding there was an initial agreement regarding the child's name.

II. Whether the circuit court erred by failing to consider additional factors in its "extreme circumstances" analysis.

For the reasons explained herein, we shall affirm.

## FACTS AND PROCEDURAL HISTORY

In 2018, when Ms. Sico was fifty years old, she decided to pursue motherhood through In Vitro Fertilization ("IVF") using both a sperm donor and an egg donor. When Ms. Sico met Ms. Becker in June 2018, she had already undergone two unsuccessful embryo transfers. Thereafter, Ms. Sico and Ms. Becker began a romantic relationship and, in early 2019, agreed that the couple would attempt to conceive a child together using Ms. Becker's eggs and a donor's sperm. Later that year, after two embryo transfers, Ms. Sico became pregnant. In December 2019, Ms. Sico and Ms. Becker became engaged to be married.

In early 2020, the couple began discussing the name of their baby. The couple agreed quickly on the first name, Bodhi, but engaged in further discussions regarding the baby's surname. Ms. Sico testified that because they were engaged at the time, both women agreed that the child's surname would be Becker if they married. In that scenario, Ms. Sico would change her last name to Becker, making that their family name. The couple also

---

II. Did the Circuit Court err when it failed to consider additional factors to the "extreme circumstances" standard to determine the name change of the minor child?

2

discussed the importance of including both women's surnames in their baby's name. To accomplish this, they agreed to use Sico as the baby's middle name. In February 2020, Ms. Sico and Ms. Becker announced the baby's name -- Bodhi Sico Becker -- at their baby shower. As a thank you to friends and relatives, the couple sent photo magnets that included the baby's full name.

Bodhi was born on March 19, 2020. At the time of his birth, Ms. Sico and Ms. Becker remained unmarried. Both parents were present at the birth and both parents signed the birth certificate indicating the name Bodhi Sico Becker. Ms. Sico also signed an Affidavit of Parentage that listed the baby's name as Bodhi Sico Becker.

In June 2021, the couple separated. In December of that year, Ms. Becker signed a Consent to Change Name form. The parties were unable to recall or agree on who prepared this form, but the form indicates that it is "by and through" Colleen Marie Sico. The proposed name listed on the form is Bodhi Alexis Becker-Sico. Despite this signed consent, the name was never changed. Ms. Sico testified that she did not agree to the change because the middle name Alexis did not properly represent her family.

In January 2022, Ms. Becker filed a Petition for Custody of Bodhi and litigation ensued. A custody agreement was reached in November 2022. The Custody Agreement granted the parties joint legal custody and required them to engage with a parent coordinator in the event of an impasse. Section F of the Custody Agreement, entitled "Name Change," provided that the "parties shall directly discuss and thereafter meet with [the] parent coordinator . . . or mutually agreed mediator, in accordance with the dispute resolution protocol set forth herein, to explore changing the child's last name to reflect both

3

parents." During these sessions, Ms. Sico and Ms. Becker were unable to reach an agreement regarding a name change. Ms. Sico testified that Ms. Becker agreed to hyphenate the last name to either Sico-Becker or Becker-Sico but that they could not agree to a middle name. Ms. Sico testified that Ms. Becker preferred the middle name Alexis, while Ms. Sico wished to use the middle name Joseph, after her father.

In October 2023, Ms. Sico filed an Amended Petition for a Name Change in the Circuit Court for Montgomery County. In this petition, Ms. Sico requested Bodhi's name be changed to Bodhi Joseph Sico-Becker. The parties appeared before the Circuit Court in March 2024. There, Ms. Sico argued that Ms. Becker and she had never agreed to the name Bodhi Sico Becker because that name was conditioned upon the two women getting married. Because they did not get married, the condition had not been met and, therefore, no agreement existed at the time of birth.

Ms. Sico argued that because no agreement existed at the time of Bodhi's birth, the court should apply the best interest of the child standard in determining whether the name change is appropriate. Under this analysis, Ms. Sico contended that several facts supported the name change. First, Bodhi was only four years old at the time and able to write his full name. Second, Ms. Sico had not engaged in any misconduct that would make the change detrimental to Bodhi. Third, the change would allow both mothers equal access to Bodhi during emergencies, doctors' visits, and in other contexts where Ms. Sico argued her status as Bodhi's mother had been questioned due to her last name. Finally, Ms. Sico argued that the name change was important to preserving her relationship with Bodhi. She worried

4

that over time his middle name was being used less often, and hyphenating would ensure it remained a primary part of his name.

Ms. Sico also argued, in the alternative, that if the court determined that there was an agreement regarding Bodhi's name at the time of his birth that the name change request would be reviewed under the "extreme circumstances" standard. If the court reached this conclusion, Ms. Sico argued, it should consider expanding the definition of "extreme circumstances" to address the changing nature of relationships and parenthood in modern times.

Ms. Becker disagreed, arguing that the parties agreed on the name at the time of Bodhi's birth. In support of this contention, she stressed that both parties had been present at the hospital and both parents signed forms and other paperwork indicating the name Bodhi Sico Becker. She further maintained that there was no evidence that the agreement was conditioned on the parties being married. For these reasons, Ms. Becker contended that the court should apply the extreme circumstances standard and find that no such circumstances exist to justify a change to Bodhi's name.

At the conclusion of the hearing, the court found that (1) there had been an agreement between Ms. Sico and Ms. Becker concerning the name Bodhi Sico Becker; (2) no extreme circumstance existed to support changing Bodhi's name; and (3) it was not in Bodhi's best interest to change his name. The court declined to expand the definition of extreme circumstances for the purpose of changing the name. In support of its finding that the parties had agreed to the name at the time of Bodhi's birth, the court relied heavily on the fact that both parents were present at the time of the birth and both signed the birth

certificate using the name Bodhi Sico Becker. The court commented, "the birth certificate, just like a written contract, is evidence of the meeting of the minds." In considering whether there was a condition precedent to this agreement, the court said, "[t]his isn't a wedding right. This is somebody's identity." The court also noted the lack of substantive evidence of any condition precedent.

After determining that the parties agreed to the name, the court then considered whether extreme circumstances existed to render the name change appropriate. The court found that there was no "evidence of misconduct by a parent that could make the child's continued use of the parent's surname shameful or disgraceful," and that no parent had "willfully abandoned or surrendered [her] natural ties to the child." The court emphasized, "I could never imagine that happening. You all will never do that. It's never going to happen." Although Ms. Sico had requested that the court consider expanding the definition of extreme circumstances given modern changes to the traditional family structure, the court declined to do so. The court addressed one of Ms. Sico's primary concerns, that having a different name than Bodhi caused her problems, saying,

> I understand the concern that [Ms. Sico] has that when she goes somewhere, and people challenge her on her name. I will tell you that is not as unique as -- it's you, but it's not a unique thing.
>
> I know many people who, in any kind of marriage, same sex, opposite sex get married and people don't change their name, and then, the children have only one of those two parents' names and the parent who is on the out has to explain, this is my child.
>
> Parents who already have children with another partner, maybe they get divorced and then they get remarried. Many of those

6

> children do not want to change their last name. And mom or dad who doesn't share the same last name or mom or mom or dad and dad, however we have it, has to explain. I'm the new parent. I'm still that person's parent. And more and more, hopefully, people understand that.
>
> That someone might be confused that there's two moms. I get it. But hopefully they deal with that with grace and hopefully, we deal with that better and better as life goes on because that's a reality.

Even though no extreme circumstances existed to support changing Bodhi's name, the court nonetheless considered whether the name change was in the child's best interest. The court found that at age four, Bodhi was not "of age and maturity to express name preference," although "he knows who he is. And that's important." The court considered that Bodhi had been using the last name Becker "his entire life, but he knows that he is a [Sico] and that [Sico] is who he is, too." The court found that it was "[a]bsolutely not the case here," that use of his name would cause "embarrassment, difficulties, [or] harassment," and that there was no "[f]ailure of one of the parents to contribute to child support or maintain contact with the child." The court, finally, considered the "degree of community goodwill or respect associated with" the surname and addressed that Ms. Becker had indicated her family name was well known, particularly in New England, for philanthropic work.

Ultimately, the court found that "certainly when I look at those factors, in either way doing the analysis, either emergent circumstances or best interest of the child, I'm going to find that the plaintiff has not reached the level necessary for the [c]ourt to find it's in the child's best interest to change his name, even by just a hyphen."

7

## DISCUSSION

**Standard of Review**

The appellate courts "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md. Rule § 8-131(c). "There is an abuse of discretion where no reasonable person would take the view adopted by the [circuit] court . . . or when the court acts without reference to any guiding rules or principles." *Meyr v. Meyr*, 195 Md. App. 524, 550 (2010) (cleaned up). The circuit court's factual findings are reviewed for clear error, and "if it appears that the [court] erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless." *Reichert v. Hornbeck*, 210 Md. App. 282, 304 (2013).

**I.     The circuit court did not err in finding that Ms. Sico and Ms. Becker came to an initial agreement regarding the name Bodhi Sico Becker and denying the name change request.**

Ms. Sico argues on appeal that the court erred in finding that Ms. Becker and she agreed on the name Bodhi Sico Becker at the time the child was born. In support of this contention, Ms. Sico argues that the name Bodhi Sico Becker was conditioned on Ms. Sico and Ms. Becker getting married. Because the couple did not get married, Ms. Sico contends that the condition precedent to their name agreement was not met and, therefore, no agreement existed at the time of Bodhi's birth. Ms. Sico argues that the circuit court failed to make any findings regarding her testimony about the parties' conditional agreement or about the parties' discussions and actions related to hyphenating the child's last name after their 2021 separation. Under these circumstances, Ms. Sico maintains that

8

the court erred in finding there had been an initial agreement and applying both the best interest of the child standard and the extreme circumstances standard in determining whether the name change was proper. Instead, Ms. Sico argues, the court should only have applied the best interest standard and, per that standard, found that changing Bodhi's name to Bodhi Joseph Sico-Becker was in his best interest. We disagree on both accounts.

Where the alteration of a child's name is concerned, Maryland recognizes two distinct situations. The first exists when both parents agreed to the child's name at the time of birth. Such cases are referred to as "change of name" cases. This situation was first explored in *West v. Wright*, 263 Md. 297 (1971). There, following divorce and remarriage, Mrs. Wright sought to have her children's surname changed to that of her second husband, Mr. Wright. *West*, 261 Md. at 298. Driven in part by outdated notions that "the father has a natural right to have his son bear his name[,]"the Maryland Supreme Court held, on appeal, that courts should be reluctant to deprive the father of this right "except under extreme circumstances." *Id.* at 299-300. In so holding, the Court determined that the "most prevalent basis for allowing a change of name is where there is proof of serious misconduct by the father which adversely affects the best interests of his children." *Id.* at 301. "The other factors to be considered," the Court further held, "all relate to whether a father has willfully abandoned his children and severed natural ties with them." *Id.* Today, these factors do not relate, by default, to the father. Rather, the test must be applied to the parent whose name the child currently bears.

The second name change scenario arises when there was never an agreement between the child's parents as to the name of the child. In *Lassiter-Geers v. Reichenbach*,

9

303 Md. 88 (1985), the Supreme Court of Maryland explored such a situation.  There, Mrs.

Lassiter-Geers and Mr. Reichenbach were separated when she gave birth to their daughter.

*Lassiter-Geers*, 303 Md. at 90.  At the time of the birth, Mrs. Lassiter-Geers chose to give

her daughter her maiden name, Lassiter.  *Id.*  Mr. Reichenbach was not consulted about the

name and did not find out about it until seven months following the child's birth.  *Id.* at 91.

Following her divorce from Mr. Reichenbach, she resumed using the name Lassiter.  *Id.*

Mr. Reichenbach filed a petition asking the court to order that the child's surname be

changed to Reichenbach.  *Id.*  By the time of the hearing, Mrs. Lassiter-Geers had gotten

remarried and taken the surname Lassiter-Geers.  *Id.*  The trial court, using the best interest

of the child standard, found that the child should be given Reichenbach's name.  *Id.*

On appeal, Mrs. Lassiter-Geers argued that under *West*, the child's name should

only be changed in extreme circumstances.  *Id.* at 93.  The Court, however, determined that

"because the parents did not agree upon a surname for the child, she was without a

surname."  *Id.*  In such a case, rather than changing the child's name, the Court instead was

tasked with determining "the proper surname of the child in question."  *Id.*  Importantly,

the Court in *Lassiter-Geers* assumed without deciding that Article 46 of the Maryland

Declaration of Rights eliminated "any right which a father had by prior custom or law to

have a child bear his surname[.]"[2]  *Id.* at 94.  It followed from this assumption "that parents

have the right jointly to adopt any surname for their child they wish to adopt, just as they

determined what shall be a child's given name."  *Id.* at 95.  In cases where no agreement

---

[2] Article 46 of the Maryland Declaration of Rights guarantees that "[e]qual rights
under the law shall not be abridged or denied because of sex."

10

has been reached, therefore, the Court held that the decision should be reached based solely on the child's best interest. *Id.*

Since these two earlier cases, the courts have further clarified and solidified the difference between a "change of name" case and a "no name" case. In *Schroeder v. Bradfoot*, 142 Md. App. 569 (2001), this Court held that in a "change of name" case, "a name change only is warranted if it is in the child's best interests *and* the moving party shows 'extreme circumstances.'" *Schroeder*, 142 Md. App. at 581. In this way, the burden is placed on the parent seeking the name change to illustrate that extreme circumstances exist. This differs from a "no name" case, in which "a pure best interests standard" applies, "without either party bearing [the] burden of proof[.]"[3] *Id.* at 586. We reasoned that this standard is appropriate because both parents have "equal legal responsibility for and equal rights, including naming rights, respecting the child[.]" *Id.* at 585. To place the burden on one parent or the other would be to violate this equal right. The Court in *Dorsey v. Tarpley*, 381 Md. 109, 118 (2003), similarly confirmed that if, "based on the evidence, it is found that there was no parental mutual agreement" on the name "at birth, the [court] should be

---

[3] In *Schroeder*, this Court enumerated the factors to be considered in the best interest analysis. The factors include: (1) the child's reasonable preference, if the child is of the age and maturity to express a meaningful preference; (2) the length of time the child has used any of the surnames being considered; (3) the effect that having one name or the other may have on the preservation and development of the child's mother-child and father-child relationships; (4) the identification of the child as a part of a family unit; (5) the embarrassment, difficulties, or harassment that may result from the child's use of a particular surname; (6) misconduct by one of the child's parents disparaging of that parent's surname; (7) failure of one of the child's parents to contribute to the child's support or maintain contact with the child; and (8) the degree of community good will or respect associated with a particular name. *Schroeder*, 142 Md. App. at 588.

guided by the appropriate best interest of the child factors . . . If the court determines, however, that an agreement existed at birth, the court, before granting a name change, must be satisfied that 'extreme circumstances' justify that decision."

In determining whether an agreement existed, the courts have typically looked to the facts surrounding the initial naming of the child, including whether both parties were present at the birth, who signed the birth certificate bearing the given name, and when the name became known to the challenging party. *See Dorsey*, 381 Md. at 116 ("Relevant evidence . . . might be found in, among other places, the presence or absence of the Father's signature on the birth certificate or so-called 'acknowledgement of parentage,' the Mother's testimony, the Father's testimony, and/or the testimony of any relatives or other witnesses who were present during any discussion about naming the Child at birth.") In *Schroeder*, the Court found that no agreement as to the name existed between the parties at the time of the child's birth. *Schroeder*, 142 Md. App. at 587. This conclusion was reached based on evidence elicited at trial that the child's mother "took custody of [him] from birth; that paternity had not been established or acknowledged . . . when [the child] was born; [and] that [the mother] assigned [the child] his name, which was entered on his birth certificate[.]" *Id.* at 588. The father did not learn the child's name until several months following his birth. *Id.* at 571.

Our case law leads us to the conclusion that in a "no name" case, in which the parties never agreed to the child's name, the court must conduct a pure best interest of the child analysis to determined which name should be given to the child. In this way, the court avoids placing a burden of proof on either party, both of whom enjoy the equal right to

12

name their child. This test alone guides this determination. In a "change of name" case, wherein the parents agreed to the child's name at the time of birth, a court must engage in both a best interest analysis and, even if the name change is in the child's best interest, continue to an extreme circumstances analysis before approving any change to the child's present name. Best interest in such a situation is not independently sufficient to warrant changing a name that both parents agreed to at the child's birth. Alternatively, if a court finds that extreme circumstances exist to change the child's name, it is still incumbent upon the court to conduct a best interest analysis to ensure that, notwithstanding the extreme circumstances, it is also in the child's best interest to change the name. In this way, extreme circumstances alone are also not sufficient to support the change of a child's name when the parents mutually agreed upon that name.

Here, the circuit court did not abuse its discretion in determining that Ms. Sico and Ms. Becker did have an agreement regarding Bodhi's name at the time of his birth. In making this finding, the court relied on the fact that both parents were present at the birth of the child and both parents signed the birth certificate indicating the name Bodhi Sico Becker. As the circuit court properly found, not only did Ms. Sico and Ms. Becker jointly file the birth certificate bearing Bodhi's name, but they had also previously discussed the name, jointly announced the name to their friends and family, and filed legal documents bearing the child's name. This situation bears no resemblance to the facts in *Lassiter-Geers* and *Schroeder*, in which the fathers took no part in naming their children and did not even learn of their children's names until months after their births. In contrast, it cannot be said

13

that Bodhi was "without a surname" for the first several years of his life. *Lassiter-Geers*, 303 Md. at 93.

The circuit court also appropriately considered any tangible evidence of the alleged condition precedent. The court noted that "there's nothing that was shown to me in writing; nobody really had any testimony to say that this was a case other than certainly plaintiff did raise that we were going to get married. The idea was that these names would be in this order because we're getting married." The court noted, however, that a child's name "isn't a wedding right. This is somebody's identity." The court found, therefore, that although the parties were not married at the time of Bodhi's birth, they had agreed on his name at that time. The circuit court was not required to consider discussions, agreements, or disagreements related to Bodhi's surname that occurred after his birth, as these facts have no bearing on whether there was an agreement when Bodhi was initially named.

After finding that Ms. Sico and Ms. Becker reached an agreement regarding Bodhi's name at the time of his birth, the trial court appropriately considered whether the name change was in Bodhi's best interest and whether extreme circumstances existed to support changing Bodhi's name. The court did not abuse its discretion in finding, based on the facts presented, that no extreme circumstances were present in this case. Similarly, in its best interest analysis, the trial court correctly considered each appropriate factor and found that no facts supported the contention that a name change was in Bodhi's best interest. In conducting a thorough analysis of all relevant factors of both tests, the court did not err in rendering its final determination denying Ms. Sico's request to change Bodhi's name.

14

**II.    The Court did not err in failing to consider additional factors to the "extreme circumstances" standard when determining whether the name change was appropriate.**

Ms. Sico argues on appeal that the court erred when it failed to consider additional factors to determine whether extreme circumstances existed to support changing Bodhi's name.  In support of this contention, Ms. Sico contends that the current "standards are too limited for the realities of modern-day families and minimize the rights of a parent who may not have had an equal say, or any say, in the naming of their child."  Ms. Sico further argues that the "tests and standards derived from *West* do not contemplate the changes in modern-day society," and that "[a]dditional factors that are significant and in the best interest of a child today are overlooked, such as in the case at bar."

Ms. Sico suggests that in the present case, these additional factors should include (1) the parties' alleged conditional agreement; (2) Ms. Sico's strong attachment to her surname and familial lineage; (3) the existence of post-birth agreements and negotiations to include both parents' surnames; (4) Ms. Sico's journey to parenthood, including her experience through IVF treatments; and (5) circumstances unique to same-sex parents, including Ms. Sico's testimony regarding confusion as to her relationship with Bodhi due to their different last names.

At the heart of our review of both "change of name" and "no name" cases in Maryland, is the notion that "neither parent has a superior right to determine the initial surname their child shall bear." *Lassiter-Geers*, 303 Md. at 94.  To serve this end, when both parents agree to a child's name at birth, even if a name change is in the child's best interest, "there is a presumption against granting such a change except under 'extreme

15

circumstances.'" *Dorsey*, 381 Md. at 115. To presume otherwise would be to improperly deprive one parent or the other of their equal rights to name their baby. Conversely, when no agreement existed at the time of a child's birth, the court applies a pure best interest of the child test. By doing so, the court similarly keeps both parents on equal footing, choosing a name for the child based solely on what is in that child's best interest.

Undoubtedly, Ms. Sico raises legitimate concerns. As she points out, the "extreme circumstances" factors most often applied are deemed "paramount" because "they epitomize the sort of exceedingly negative behavior by a parent that will justify changing the child's surname . . . , when the parents gave the child that parent's surname at birth." *Schroeder*, 142 Md. App. at 584. Even if this Court were to consider expanding the required factors, such factors would still need to inform a finding of extreme circumstances. In the context of a name change case, although an extreme circumstances analysis seeks to protect each parent's right to name their child, the circumstances themselves must necessarily focus on the child's wellbeing. Only if maintaining the current name is adversely affecting the *child*, will a previously agreed upon name be changed. In our view, the considerations Ms. Sico raises do not rise to that level, so we decline to conduct such an examination here.[4]

---

[4] We do not suggest here that additional factors should never be considered within a court's consideration of extreme circumstances. Given the broad societal changes that have come to pass over the past twenty-two years since the Supreme Court of Maryland last examined this issue, a renewed look at what constitutes extreme circumstances for purposes of a child's name change may certainly be appropriate.

Although much of the Court's reasoning in *West* is indisputably outdated, the Court properly considered whether the particular circumstances of that case rose to the level of extreme circumstances. There, the children's mother argued "that since the last name of the children is different than hers, it is a source of constant embarrassment to them all." *West*, 263 Md. at 302. The Court explained, however that "minimal instances of embarrassment[,]" such as the children's "minor skirmishes with playmates," and "some slight clerical mixups with doctors' records . . . would certainly not merit so drastic an action as a name change." *Id.* The Court continued by noting that, "in a county in which nearly 25% of all marriages in a given year involve previously married people, it is not an unusual occurrence to have children and parents living together with different last names." *Id.*

Here, the circuit court similarly considered the specific concerns Ms. Sico raised and chose not to address these matters in its extreme circumstances analysis. As the court explained, "I understand the concern that plaintiff has that when she goes somewhere, and people challenge her on her name. I will tell you that is not as unique – it's you, but it's not a unique thing." As the circuit court acknowledged, families who do not all share a last name have become more common since *West* was decided. Blended families, same sex couples, and babies born via IVF have also all become increasingly common. We do not suggest that commonality removes stigma and that families in these positions never face problems, confusion, or embarrassment as a result. These circumstances, however, cannot be considered "extreme" for the purposes of this analysis and, as the Court held in

17

*West*, do not "merit so drastic an action as a name change," when the parents of that child agreed to the child's name at birth.  *Id.*

## CONCLUSION

For the foregoing reasons, we hold that the Circuit Court for Montgomery County did not err in denying Ms. Sico's name change petition.  We, therefore, affirm the finding of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

18