916 A.2d 311

Artavius Donnell COX

v.

STATE of Maryland.

No. 39, Sept. Term, 2006.

Court of Appeals of Maryland.

Feb. 8, 2007.

202 

Allison E. Pierce, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioner/cross-respondent.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent/cross-petitioner.

Argued before BELL, C.J., RAKER,* WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

GREENE, J.

In this case, we must determine whether Artavius Donnell Cox ("Petitioner") was entitled to have suppressed, as evidence at his trial, a quantity of marijuana that the police found on the ground near him, after an arguably illegal stop. The drugs seized in this case were recovered after the police obtained information that there existed an outstanding warrant for Petitioner's arrest. We are asked to review two issues. First, whether a police encounter, in which a uniformed officer approached Petitioner on the street claiming that he "loosely fit" the description of the perpetrator of a recent string of robberies, asked Petitioner for identification, and ran a check on his identification, constituted an illegal stop in violation of the Fourth Amendment of the United States Constitution. In addition, whether a police officer's subsequent discovery of an outstanding arrest warrant represented an intervening circumstance,[1] such that if the stop were illegal, the arrest on the warrant attenuated the taint of the illegal stop.

We need not address the first issue because that question is not dispositive to our analysis of whether Petitioner's motion to suppress should be granted or denied. Assuming *arguendo*, that the police encounter constituted an illegal stop, we

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The phrases "intervening circumstance" and "intervening cause" will be used interchangeably through out this opinion.

deem it more appropriate to determine the ultimate question: whether it was proper for the trial court to grant Petitioner's motion to suppress the evidence. Although the State did not specifically contend, at the suppression hearing, that Petitioner's arrest constituted an intervening circumstance sufficient to attenuate the taint of the stop, the issue and the State's contention on appeal that the arrest pursuant to a warrant was lawful is, nonetheless, preserved for appellate review. We shall hold that the police officer's discovery of an outstanding warrant for Petitioner's arrest and Petitioner's arrest pursuant thereto represents an intervening circumstance sufficient to attenuate the taint of what appears to be an illegal stop. Accordingly, we shall affirm the judgment of the Court of Special Appeals and hold that the Circuit Court erred in granting Petitioner's motion to suppress the evidence.

## FACTUAL BACKGROUND

On April 6, 2005, Sergeant Jeff Bryant was patrolling the Lancaster neighborhood in Waldorf, Maryland, driving a marked police car and wearing a police uniform, because there had been a series of robberies, the last of which had occurred on the previous day. The victim of that robbery had described the perpetrators as "two teen-age black males."

At approximately 11:05 a.m., Sergeant Bryant noticed Petitioner and a man, later identified as Mr. Martin, walking towards him, on the sidewalk, adjacent to Lancaster Circle. Sergeant Bryant testified that the men appeared to be avoiding him. The men then left the sidewalk and walked onto another street. Sergeant Bryant was not sure whether the men saw him before changing their route. The Sergeant advised another officer that he intended to stop the men.

Sergeant Bryant circled in his car, met with a second officer at a specified interception point, and then stopped Petitioner and Martin. Two other officers appeared "a couple minutes later." Sergeant Bryant got out of his vehicle, identified himself, and approached the men. He "asked the gentlemen for identification, explained to [them] that [the police] were

having a problem with robberies of the citizens of the area and that the [ ] two gentlemen loosely fit the description of those suspects." Both Petitioner and Martin provided their Virginia identification cards to Sergeant Bryant. While remaining with the men, Sergeant Bryant "ran that information through the agency radio asking for a local MILES and NCIC check of wanted status...." Sergeant Bryant further testified, at the suppression hearing, that while checking Petitioner's identification, Petitioner was not free to leave but Sergeant Bryant did not know if he would have chased Petitioner if Petitioner had run away.

After about two minutes, Sergeant Bryant received a code "Sam Roberts," which meant that he should secure his radio (so that the men could not hear it) because at least one of the individuals about whom he had inquired had an outstanding warrant. In response, Sergeant Bryant told both men to sit on the ground with their hands on their heads and awaited confirmation as to which man had the outstanding warrant. Soon thereafter, Sergeant Bryant received confirmation that it was Petitioner who had an open warrant for failing to appear in court on drug charges. The Sergeant then placed Petitioner in handcuffs. One of the other officers on the scene, Officer Gotschall, then noticed a plastic baggie of marijuana lying on the ground. Sergeant Bryant testified that the marijuana was not on the ground before he asked Petitioner and Martin to sit down and place their hands on their heads.

On May 2, 2005, the State charged Petitioner with various drug-related offenses, including possession of marijuana and possession of a controlled dangerous substance with intent to distribute. On May 11, 2005, Petitioner filed a motion to suppress the marijuana on the grounds that it was unlawfully obtained.

The Circuit Court for Charles County heard testimony and argument on August 12, 2005. At the hearing, the State argued that Petitioner was arrested pursuant to an outstanding warrant and cited *Gibson v. State*, 138 Md.App. 399, 771 A.2d 536 (2001), a case in which the intermediate appellate

court explained the fruit of the poisonous tree doctrine and also explained the three ways in which to dissipate the taint. The State did not use the words "attenuation," "taint" or "intervening cause" in its argument. The Circuit Court granted the motion to suppress on September 8, 2005 because it found that the encounter between Petitioner and Sergeant Bryant constituted a stop, and that the Sergeant did not have "an objective manifestation that the person stopped [wa]s or [wa]s about to be engaged in criminal activity.... There [wa]s no indication that they were possessing or about to be engaged in marijuana activity or CDS activity."

The State appealed to the Court of Special Appeals, arguing that (1) Petitioner was not illegally detained, and that (2) even if he was, the evidence should still not be suppressed because the arrest warrant constituted an intervening circumstance that attenuated the illegality of the detention. Petitioner argued that the State failed to preserve for appellate review the latter argument. In an unreported opinion, filed on March 29, 2006, the intermediate appellate court reversed the judgment of the Circuit Court. That court found that the stop of Petitioner was actually a mere accosting because it was both "consensual and voluntary." The intermediate appellate court agreed with Petitioner, as to the second point, because it perceived that the State argued only two points at the trial level: that the encounter was consensual and that Petitioner's identity was not suppressible. The court determined that neither point preserved an argument based on the attenuation doctrine. As a result, the Court of Special Appeals determined that the marijuana should not have been suppressed, and, because the police encounter was consensual, the Fourth Amendment was not implicated.

Petitioner filed a petition for writ of certiorari [2] in this Court

---

**2.** Petitioner presented the following issue in his petition for writ of certiorari:

Did the Court of Special Appeals err when it held that petitioner was the subject of a[ ] consensual encounter for purposes of the Fourth Amendment, despite the fact that petitioner was stopped by multiple

and the State filed a conditional cross-petition.[3] We granted both petitions. *Cox v. State*, 393 Md. 477, 903 A.2d 416 (2006).

## DISCUSSION

### A.

### The Legality of the Police Encounter

The Fourth Amendment of the United States Constitution protects individuals against unreasonable searches and seizures. It states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Because of this constitutional protection, police officers must have, at a minimum, reasonable, articulable suspicion that a person is involved with, or has committed, criminal activity before they can lawfully seize that individual. *Ferris v. State*, 355 Md. 356, 374–75, 735 A.2d 491, 500–01 (1999). Officers may, however, question an individual, absent reasonable, articulable suspicion, if the encounter is consensual and voluntary. *Id.* The Fourth Amendment is therefore not implicated "simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991). Likewise, police officers

---

police officers who asked him for his identification, informed him that he "loosely fit" the description of a robbery suspect, and proceeded to run a warrant check on him while one of the officers remained by his side?

**3.** The State presented the following question in its conditional cross-petition:

Did the Court of Special Appeals err in holding that the State's attenuation argument was not preserved for appellate review?

do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.

*Stanberry v. State*, 343 Md. 720, 742, 684 A.2d 823, 834 (1996) (quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983)). Whether "a particular encounter constitutes a seizure, or whether the encounter was simply a 'consensual' non-constitutional event is whether a reasonable person would have felt free to leave." *Ferris*, 355 Md. at 375, 735 A.2d at 501. "Although the inquiry is a highly fact-specific one, courts have identified certain factors as probative of whether a reasonable person would have felt free to leave." *Ferris*, 355 Md. at 377, 735 A.2d at 502. They include:

the time and place of the encounter, the number of officers present and whether they were uniformed, whether the police removed the person to a different location or isolated him or her from others, whether the person was informed that he or she was free to leave, whether the police indicated that the person was suspected of a crime, whether the police retained the person's documents, and whether the police exhibited threatening behavior or physical contact that would suggest to a reasonable person that he or she was not free to leave.

*Id.* This Court has used a "totality of the circumstances approach" when evaluating these factors to make its ultimate determination of whether a reasonable person would have felt free to leave. *See, e.g., id.*

Petitioner argues that, based upon the above-mentioned factors, he was the subject of a seizure prior to the time that the officers received the code "Sam Roberts" alerting them

that Petitioner had a warrant outstanding for his arrest. Petitioner argues that the stop was unconstitutional because it was not supported by reasonable, articulable suspicion. In evaluating the factors for support of the legality of the stop, Petitioner argues that he was stopped by four officers, at least one of whom was in uniform, that the officers asked him for identification, that the record fails to indicate that any of the officers ever told him that he was free to leave, that Sergeant Bryant admitted at trial that Petitioner was not free to leave, and that Sergeant Bryant explained to Petitioner that he loosely fit the description of the perpetrator of a recent robbery that the officer was investigating. Petitioner asserts that no reasonable person in Petitioner's position would have felt free to leave.

The State argues that, prior to the discovery of the outstanding warrant, the encounter constituted merely an accosting, and not an illegal stop. The State cites several cases for the proposition that an officer may ask an individual for things like identification so long as he does not use physical force or restraint. In evaluating the *Ferris* factors, the State posits that the encounter occurred at 11:05 in the morning, in a residential area, and that nothing indicates that Petitioner was moved to another area. In addition, the police never told Petitioner that he was not free to leave. Sergeant Bryant also told Petitioner about the other robberies and told Petitioner that he only "loosely" matched a description. Lastly, the officer did not walk away with Petitioner's identification and never told Petitioner that he was under arrest, never touched Petitioner, never handcuffed him, never drew his gun, and never used the word "stop."

We need not reach the merits of these arguments because our decision in this case is not dependent on the outcome of Petitioner's contention that the stop was illegal. We reach this result because the discovery of the outstanding warrant and arrest pursuant thereto constituted an intervening circumstance that attenuated the taint of the arguably illegal stop. We assume *arguendo,* as we did in *Myers v. State,* 395 Md. 261, 909 A.2d 1048 (2006), that Sergeant Bryant, in this case,

had neither probable cause nor reasonable articulable suspicion to stop Petitioner.

## B.

### The State's Preservation for Appellate Review of the Intervening Cause Issue

■ We now examine whether the State preserved for appellate review its intervening circumstance argument. Petitioner contends that because the State failed to argue to the motions court that the arrest constituted an intervening circumstance, the State failed to preserve that argument for appellate review. Petitioner explains that the prosecutor put forth only two arguments to the motions court: that the stop was consensual and that Petitioner's identity is not subject to exclusion, even if the stop was unlawful. To support this latter argument, the prosecutor cited, and relied upon, *Gibson v. State*, 138 Md.App. 399, 771 A.2d 536 (2001), an intermediate appellate court decision in which that court concluded, *inter alia*, that an individual has no expectation of privacy in his or her identity. Petitioner then explains that, in the intermediate appellate court, the State abandoned the identity argument and replaced it with the contention that an arrest, pursuant to an outstanding warrant, was an intervening circumstance that dissipated any taint flowing from the officer's illegal stop of Petitioner. Petitioner asserts that the State's intervening circumstance argument "differs dramatically" from the initial argument advanced at the trial level, such that this Court should hold, as did the Court of Special Appeals, that the intervening circumstance argument was not preserved for appellate review.

The State counters arguing that, although the prosecutor never specifically mentioned the words "dissipate" or "attenuate" to the motions court, the argument was preserved by mention of the outstanding arrest warrant and reference to *Gibson*, because that case explains the fruit of the poisonous tree doctrine and the three theories of "unpoisoning" the fruit; attenuation and dissipation of taint are fruit of the poisonous

tree concepts. The State asserts that by citing *Gibson*, "the underlying doctrine of unpoisoning the fruit of the alleged illegal stop was before the motions court" and, therefore, the Court of Special Appeals erred by holding otherwise.

We reject Petitioner's argument and the conclusion of the Court of Special Appeals, as to this point, and hold that the intervening cause or circumstance issue is properly before us. It is well settled that an arrest is constitutionally valid where the arresting officer acted in good faith and obtained a warrant based upon probable cause. *Chimel v. California,* 395 U.S. 752, 754, 89 S.Ct. 2034, 2035, 23 L.Ed.2d 685, 688–89 (1969) (establishing standards for searches incident to a lawful arrest). The burden of production and persuasion is on the party who would rebut the presumptive validity of the warrant. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980) (noting that "Petitioner ... bears the burden of proving that the search ... was illegal"); *Duncan and Smith v. State,* 27 Md.App. 302, 315–16, 340 A.2d 722, 731 (1975) (stating generally that the defendant has the burden of going forward with the evidence at a suppression hearing, and " '[t]he burden of persuasion remains throughout upon the one who at the outset has asserted the affirmative of the issue' ") (citations omitted). The issue before us is a question of law, and we review questions of law *de novo. State v. Rucker,* 374 Md. 199, 207, 821 A.2d 439, 444 (2003) (noting that on appellate review of a suppression motion, we undertake an independent constitutional review of the record and apply the law to the facts and circumstances of the case).

In the instant case, the State contended at the suppression hearing that Petitioner was arrested pursuant to a warrant. For certain, the burden was on Petitioner to prove at that hearing that his arrest was unlawful. In that regard, Petitioner argued that the stop was unconstitutional and that the subsequent arrest and seizure of evidence were the "fruits of the poisonous tree." In response, the State did not use the words "intervening circumstance or cause." Its basic premise, however, was the same at the suppression hearing and on

appeal—that Petitioner was arrested pursuant to an arrest warrant; the burden was on the defense to show that the arrest warrant was invalid. In addition, the State relied on *Gibson,* 138 Md.App. 399, 771 A.2d 536, which involved an explanation of the fruit of the poisonous tree doctrine and the applicable process that is employed to dissipate or attenuate the taint of the primary illegality.

We hold that the issue as to the legality of the arrest was plainly preserved, for appellate review, even though the State did not use the "magic words," "dissipate" or "attenuate," to explain why "the initial encounter [did] not matter"—because of the intervening event, i.e., the discovery of an outstanding warrant and an arrest pursuant thereto. Thus, we are satisfied that the issue was put forth at the trial level and the contention that there was an intervening circumstance is properly before us.[4]

## C.

### Suppression of the Evidence–An Application of *Myers v. State*

Because the intervening cause argument is properly before us, we now examine whether the police discovery of the arrest warrant and arrest of Petitioner pursuant to that warrant

---

4. Moreover, even if the issues were not preserved, this Court has, and the Court of Special Appeals had, the discretion to review the intervening circumstance argument pursuant to Rule 8–131. Maryland Rule 8–131, entitled "Scope of review," states, in pertinent part:

(a) Generally. The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal. *See Dorsey v. Tarpley,* 381 Md. 109, 112 n. 2, 847 A.2d 445, 446 n. 2 (2004) (noting that we have the discretion to review arguments not raised at the trial level); *see also Roary v. State,* 385 Md. 217, 225–26, 867 A.2d 1095, 1100 (2005) (noting that we may exercise our discretion to consider an issue that was not raised in the trial court).

constituted an intervening cause that dissipates the taint of the arguably illegal stop. Petitioner argues that even if the State's intervening cause argument was preserved, the trial court nonetheless correctly suppressed the evidence recovered after Petitioner was illegally stopped. Petitioner cites *Ferguson v. State*, 301 Md. 542, 483 A.2d 1255 (1984), in which this Court examined the attenuation doctrine and ultimately adopted the multi-factor analysis articulated by the Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Petitioner explains that this Court, by adopting the Supreme Court's *Brown* analysis, examines three factors to determine whether evidence obtained after an illegal arrest or stop has been purged of the taint of the illegality. The first factor is "the temporal proximity of the illegality and the evidence." *See Ferguson*, 301 Md. at 549, 483 A.2d at 1258. Petitioner next explains that the second factor to be weighed is the presence of an intervening event. *See id.* Lastly, Petitioner posits that the third factor is "the purpose and flagrancy of the official misconduct." *See Ferguson*, 301 Md. at 549, 483 A.2d at 1258. Based on these three factors, Petitioner contends that the officer's discovery of the marijuana after Petitioner's "illegal detention" was not so attenuated such that it would dissipate the taint of the illegal stop.

As to the first factor, Petitioner asserts that the discovery of the marijuana and the illegal stop were contemporaneous and that this Court, in *Ferguson*, stated that a lapse of twenty minutes weighed in favor of suppression. *Ferguson*, 301 Md. at 550, 483 A.2d at 1259. Next, Petitioner states that the arrest was not an intervening circumstance based on the Seventh Circuit's analysis in *United States v. Ienco*, 182 F.3d 517 (7th Cir.1999).[5] By analogy to *Ienco*, Petitioner argues

---

**5.** Petitioner explains that in *Ienco* officers responded to a call concerning a disturbance in a building and saw Ienco leaving upon their arrival. After questioning Ienco, the officers took his wallet and driver's license and placed him in the backseat of the patrol car while the officers continued their investigation. Ienco was subsequently arrested and taken to the police station. Several hours later, the police searched the patrol car and discovered a key to a minivan, which police later

that "it is evident that the contraband was left on the ground before, and not after, [Petitioner] was arrested on the valid warrant" because Petitioner was seated while illegally detained and stood up to be arrested. Petitioner contends, therefore, that under *Ienco*, this Court should find that the marijuana should be suppressed.

Petitioner states further that even if the arrest warrant does constitute an intervening cause, that fact alone does not mandate admission of the tainted evidence. Instead, Petitioner cites cases in other jurisdictions for the proposition that the analysis is actually a balancing test and that no one factor should be given dispositive weight. Petitioner then discusses the third *Ferguson* factor and argues that an officer's act of arresting an individual without probable cause weighs in favor of suppression. According to Petitioner, because Sergeant Bryant stopped Petitioner without reasonable articulable suspicion, Sergeant Bryant acted purposefully and flagrantly. Moreover, Petitioner states that Sergeant Bryant stopped him with the hope that the officer would discover an outstanding warrant or contraband because he never questioned Petitioner about the recent robberies, making his conduct even more flagrant. Petitioner lastly asserts that

> [t]o permit the State to use evidence obtained in this fashion would simply encourage officers to begin stopping individuals without reasonable articulable suspicion to do so and with the sole intention of uncovering contraband, knowing that if it was revealed that the individual had an outstanding warrant any evidence recovered would not b e subject to the exclusionary rule despite their unlawful act of stopping the individual in the first place.

---

searched and recovered incriminating evidence. The United States Court of Appeals for the Seventh Circuit determined that Ienco was unlawfully arrested when placed in the backseat of the patrol car while the police continued their investigation. The court then determined that the legal arrest was not an intervening event that cut off the causal connection between the illegal detention and van search, noting that Ienco could have left the key in the minivan during the period of the illegal detention in the car.

Petitioner therefore concludes that suppression is the proper remedy.

The State contravenes Petitioner's position on the basis that even if the stop were illegal, the existence and discovery of the warrant dissipates the taint. The State explains that this Court, by adopting the case law of the Supreme Court, has noted three methods by which evidence obtained after initial unlawful conduct can be purged of any taint. First, taint will be purged if the police would have inevitably or ultimately discovered the evidence notwithstanding a constitutional violation. *See Myers,* 395 Md. at 285, 909 A.2d at 1062 (citing *Nix v. Williams,* 467 U.S. 431, 443 n. 4, 104 S.Ct. 2501, 2509 n. 4, 81 L.Ed.2d 377, 387 n. 4 (1984)). Second, the taint will be purged upon a showing that the evidence was derived from an independent source. *See Myers,* 395 Md. at 284–85, 909 A.2d at 1062 (citing *Segura v. United States,* 468 U.S. 796, 813–14, 104 S.Ct. 3380, 3390, 82 L.Ed.2d 599, 614 (1984)). Third, the taint will be purged if the illegal government conduct is so attenuated as to purge any taint resulting from that conduct. *See Myers,* 395 Md. at 284, 909 A.2d at 1062 (citing *Wong Sun v. U.S.,* 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939)). In analyzing the *Brown* factors, the State argues that even though the time lapse between the stop and the discovery of the evidence was relatively brief, this Court should conclude, in accordance with *Myers,* as well as the United States Court of Appeals for the Seventh Circuit in *United States v. Green,* 111 F.3d 515, 521 (7th Cir.1997),[6] that the question of timing is not dispositive on

---

**6.** In *United States v. Green,* 111 F.3d 515, 521 (7th Cir.1997), the driver of a vehicle was illegally stopped, resulting in his detention by police. The police then performed a background check and discovered an outstanding warrant for the passenger of the car's arrest. The police arrested the passenger and searched the vehicle, discovering cocaine and a firearm. The police arrested the passenger and offered the evidence at his trial. The court applied the *Brown* test. The court determined that the first factor, time, was not dispositive on the question of taint. As to the second factor, the court determined that "[t]he intervening circumstances of this case, because they are not

the issue of taint. In addition, the State argues that because this Court, in *Myers*, decided that the discovery of an outstanding arrest warrant is an intervening circumstance, the second factor "clearly weighs in the State's favor." The State distinguishes this case from *Ienco* because there existed no outstanding arrest warrant in *Ienco*. The State points out that the *Ienco* court specifically noted that, in *Green*, it had held that the discovery of an outstanding arrest warrant is an intervening circumstance, *see Ienco*, 182 F.3d at 527–28, and that the case was different from a Fifth Circuit case, *United States v. Walker*, 535 F.2d 896, 898–99 (5th Cir.1976), where an initial illegal arrest did not taint evidence found in a search pursuant to a second lawful arrest. The State argues, therefore, that because the police had probable cause to arrest Petitioner before they discovered the marijuana, the fact that Petitioner may have discarded the bag while he was seated on the ground is not relevant. On this point, the State cites *Myers*, 395 Md. at 292, 909 A.2d at 1066, where this Court held that the "question of timing is not dispositive on the issue of taint, especially because there was an outstanding arrest warrant discovered between the initial stop and the subsequent search incident to the arrest, even though some of the evidence was discovered shortly after the illegal stop." The State points out that Sergeant Bryant stopped Petitioner because he loosely fit the description of recent burglars and that nothing in the record indicates that Sergeant Bryant acted in bad faith when he approached Petitioner and Martin for identification, as Petitioner suggests in his brief. Therefore, the State concludes that this Court must find that the probable cause from the outstanding warrant dissipated any taint from the initial detention.

---

outweighed by flagrant official misconduct, dissipate any taint caused by the illegal stop. . . . " Lastly, the court determined that because the police searched the car subsequent to the discovery of the arrest warrant, their conduct was not purposeful or flagrant, as they did not take advantage of the stop to search the car. The court therefore determined that the purpose of the exclusionary rule, to deter lawless conduct by the police, would not be furthered by excluding the evidence found in the car as a result of a search incident to an arrest.

We reject Petitioner's contention as to this point and again agree with the State. As we stated *supra*, even if the police officer's initial encounter with Petitioner was illegal, that fact would not be dispositive at this stage in our analysis. In *Myers v. State*, we analyzed the impact of an outstanding arrest warrant on an arguably unlawful stop by police officers and the application of the three factors under *Brown* for determining whether the causal connection had been sufficiently attenuated to dissipate the taint of the illegal conduct. In *Myers*, a case factually similar to the case, *sub judice*, we held that, assuming *arguendo*, the initial stop by the police of Myers's vehicle was illegal, the officer's discovery of the outstanding warrant and arrest of Myers pursuant to that warrant was sufficient to remove the taint of the initial stop such that the subsequent search of Myers and his vehicle were lawful. In addition, we acknowledged that some of the evidence was seized almost immediately after the arrest, whereas some was seized some time later after the officer obtained the additional warrants. We reasoned, however, as the State asserts, in the instant case, that "the question of timing is not dispositive on the issue of taint, especially because there was an outstanding arrest warrant discovered between the initial stop and the subsequent search incident to the arrest, even though some of the evidence was discovered shortly after the illegal stop." Further, we explained that the discovery of the warrant for Myers's arrest constituted an intervening circumstance or cause that attenuated the taint of the illegal stop. Ultimately, we looked to the purpose and flagrancy of the officer's conduct and determined that the purpose of the stop "was not to effectuate the arrest of Myers on an outstanding warrant or to search his vehicle. Merely because Officer Weikert's stop of Myers was determined to be invalid does not mean that his conduct was flagrant." *Myers*, 395 Md. at 293, 909 A.2d at 1067. Instead, we concluded that the officer stopped Myers because of what he thought was suspicious activity—speeding. Once he discovered an outstanding warrant, the officer "gained an independent and intervening reason to arrest and search Myers." Therefore, we held that the

lawful arrest and search of Myers attenuated the taint of the illegal stop and the evidence was admissible.

In our application of *Brown v. Illinois* and *Myers* to the facts of this case, we focus our attention on the three factors articulated in *Brown, supra.*

### The Temporal Proximity Factor

First, we examine the temporal proximity between the illegal stop and the evidence obtained. The stop and discovery of the marijuana were nearly contemporaneous in this case, which is likely not enough of a time lapse to attenuate the taint of the presumptively illegal stop, as Petitioner suggests. This factor suggests that the greater the time lapse between the illegality and discovery of evidence, the greater the chance that the taint has been purged. In the case *sub judice,* there existed a time lapse of merely two minutes. Neither the Supreme Court, nor this Court, has articulated an exact length of time that would guarantee that the taint had been purged, however, the time lapse between the illegal stop and discovery of evidence can hardly be less than it was here. Although, the two minute time lapse in this case, on the surface weighs in Petitioner's favor, it is not, on its own, dispositive. The temporal proximity factor must depend, therefore, on other factors to which it relates, because a "lengthy detention can be used to exploit an illegal arrest at least as easily as a brief detention." *Ferguson,* 301 Md. at 550, 483 A.2d at 1259 (citing *Dunaway,* 442 U.S. at 220, 99 S.Ct. at 2261, 60 L.Ed.2d at 841 (Stevens, J., concurring)).

Because the temporal proximity factor has been labeled ambiguous and our observation in *Myers* that the question of timing is not dispositive on the issue of taint, we focus on the other two factors. This proposition has been echoed in other courts, including the Seventh Circuit in *Green,* where a period of only five minutes elapsed between the illegal stop and discovery of evidence. *See Green,* 111 F.3d at 521 (stating that " 'the time span between the police misconduct and the search is not dispositive on the question of taint' ") (citations

omitted). We also note our conclusion in *Ferguson* that the *Brown* factors must be balanced and that no single factor is dispositive on the issue of attenuation. *See Ferguson,* 301 Md. at 553, 483 A.2d at 1260.

## The Intervening Event Factor

We therefore turn our attention to the second factor to evaluate the existence of an intervening event. As we stated in *Myers,* 395 Md. at 287–88, 909 A.2d at 1063–64, " '[a]n intervening circumstance is an event that breaks the causal connection between the unlawful conduct and the derivative evidence' " (citing *Ferguson,* 301 Md. at 551, 483 A.2d at 1259). In this case, the officers discovered the baggie of marijuana on the ground *after* Sergeant Bryant learned of Petitioner's outstanding arrest warrant, stood Petitioner up from the curb, and arrested him pursuant to that warrant. Sergeant Bryant did not ask Petitioner and Martin to sit on the ground until after he received the code "Sam Roberts," alerting him that one of the two men had a warrant outstanding for his arrest. We therefore agree with the State that the police had probable cause to arrest Petitioner before they discovered the marijuana.[7] Although Petitioner may have discarded the bag of marijuana while he was seated on the ground, that fact is not dispositive to our analysis or holding in this case.[8]

---

7. *See Myers v. State,* 395 Md. 261, 286–90, 909 A.2d 1048, 1063–65 (2006), for a discussion of other jurisdictions that have similarly determined that the police discovery of an outstanding arrest warrant constitutes an intervening cause that attenuates any taint derived from the illegal stop.

8. We note that if Petitioner abandoned the marijuana on the ground, then he could not later claim that seizure of that substance was illegal and, therefore, inadmissible against him in court. It is well settled that "Fourth Amendment protection, however, does not extend to property that is abandoned. By abandoning property, the owner relinquishes the legitimate expectation of privacy that triggers Fourth Amendment protection." *Stanberry v. State,* 343 Md. 720, 731, 684 A.2d 823, 828–29 (1996). *See also State v. Boone,* 284 Md. 1, 6, 393 A.2d 1361, 1364 (1978), (stating that " 'without question, abandoned property does not fall within that category in which one has a legitimate expectation of

While Petitioner again cites *Ienco*, this time for the proposition that a lawful arrest is not an intervening circumstance because the *Ienco* court determined that it was not an intervening event, we must reject that argument as well. Petitioner's argument lacks merit because *Ienco* is distinguishable from the case *sub judice* on a significant point. The officers in *Ienco* did not discover an outstanding warrant, as Sergeant Bryant did in this case; hence, *Ienco* is inapposite.[9]

### The Flagrancy of the Police Conduct Factor

The third and final factor is the purpose and flagrancy of the police misconduct. In this case, Sergeant Bryant testified that he stopped Petitioner because he and Martin loosely fit a witness's description of the perpetrators of recent robberies. Sergeant Bryant also knew that the robberies had occurred in that area. There exists nothing in the record to suggest that the Sergeant acted in bad faith. As we stated in *Myers*, once Sergeant Bryant discovered the outstanding warrant for Petitioner's arrest, he "gained an independent and intervening reason to arrest and search [Petitioner]." Furthermore, "[m]erely because [the Sergeant's] stop of [Petitioner] was determined to be invalid does not mean that his conduct was flagrant." *Id.*

A balance of the factors therefore demonstrates that the arrest pursuant to the outstanding warrant sufficiently attenuates any taint caused by the arguably illegal stop. While only two minutes elapsed between the illegal stop and discovery of the marijuana, we have made clear that this factor alone is not

---

privacy to bring it within the protection of the Fourth Amendment, but whether property is abandoned is generally a question of fact based upon evidence of a combination of act and intent' ") (citations omitted).

9. Of additional consequence, as the State points out, is that the *Ienco* court specifically noted that, "the interval between the police misconduct and the acquisition of evidence is not itself dispositive and must be considered along with any intervening circumstances," and then cited to *Green*, where it had held that the discovery of an outstanding arrest warrant constitutes an intervening circumstance. *Ienco*, 182 F.3d at 527.

dispositive on the attenuation issue. The arrest pursuant to the outstanding warrant constituted an intervening event, and nothing in the record suggests any flagrant misconduct by Sergeant Bryant when he stopped Petitioner and asked for identification. The other two factors therefore outweigh the temporal proximity factor.

Furthermore, we agree with the United States Court of Appeals for the Seventh Circuit's analysis in *United States v. Green,* 111 F.3d 515, 522 (1997):

Where a lawful arrest pursuant to a warrant constitutes the "intervening circumstance" (as in this case), it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated. Typically, the intervening circumstance which dissipates the taint involves a voluntary act by the defendant, such as the voluntary confession or consent to search given after an illegal search or seizure. In intervening circumstance cases involving subsequent action on the defendant's part, courts exercise great care in evaluating the later consent or confession to ensure it is truly voluntary and not the result of the earlier, and unconstitutional, police action. . . . In such cases, the dispositive question is whether the illegal act "bolstered the pressures for him to give the [statement], or at least vitiated any incentive on his part to avoid self-incrimination. . . ." In these cases, the time between the illegality and the consent is important because the closer the time period, the more likely the consent was influenced by the illegality, or that the illegality was exploited. Conversely, where a lawful arrest due to an outstanding warrant is the intervening circumstance, consent (or any act for that matter) by the defendant is not required. Any influence the unlawful stop would have on the defendant's conduct is irrelevant. And in the case of an arrest made pursuant to a warrant there is also no chance that the "police have exploited an illegal arrest by creating a situation in which [the] criminal response is predictable," such as creating a situation where the criminal will flee, which in turn will give the

police an independent basis for an arrest, and thus a search incident to the arrest. Thus, in this case there is less "taint" than in the cases already recognized by the Supreme Court and this and other circuits as fitting within the intervening circumstances exception.

(Citations omitted.)

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.**