Concurring and Dissenting Opinion by Adkins, J., which Hotten, J., joins. At a suppression hearing, the State has the burden to “articulat[e] a sufficient factual basis for the stop, and appellate courts cannot fill in blanks in the evidentiary record.” In re Jeremy P., 197 Md.App. 1, 22, 11 A.3d 830 (2011). Most respectfully, I write separately because the State did not meet its burden of showing that the totality of the circumstances created reasonable suspicion justifying the officers’ decision to chase Mr. Sizer and use a hard take-down. We should not resolve this case by repairing the deficiencies in the State’s arguments and evidence to provide a sufficient factual basis for reasonable suspicion. Despite my conclusion that this was an unreasonable seizure, the discovery of a valid arrest warrant was a sufficiently attenuating circumstance that the evidence located is admissible. For that reason, I dissent from the Majority’s holding that the stop was reasonable, but concur in the alternative holding that the evidence should have been admitted through attenuation. REASONABLENESS OF THE CHASE AND HARD TAKE-DOWN When evidence is obtained pursuant to a warrantless search or seizure, the State carries the burden in a suppression hearing to justify the lawfulness of the officers’ conduct and demonstrate that the evidence is admissible. See Grant v. State, 449 Md. 1, 30, 141 A.3d 138 (2015) (“[Wjithout satisfying its burden of proof, the State did not establish that the evidence was admissible .... ”); see also Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). “[T]he officer must explain how the observed conduct, when viewed in the context of all the other circumstances known to the officer, was indicative of criminal activity.” Crosby v. State, 408 Md. 490, 508, 970 A.2d 894 (2009). A reviewing court accepts the suppression court’s factual findings unless they are clearly erroneous. Raynor v. State, 440 Md. 71, 81, 99 A.3d 753 (2014). Because Mr. Sizer’s Motion to Suppress was granted, inferences in this case should be drawn in the light most favorable to him. Id. Here, the Majority concludes that the hearing “judge erred in her application of the totality of the circumstances analysis because she based her decision on ambiguous testimony and identified Mr. Sizer’s flight as the dispositive factor in the analysis.” Maj. Op. at 370, 174 A.3d at 337. In the Majority’s view, the hearing judge “did not consider other pertinent factors in their totality, such as the officers’ suspicion of an open container violation or their attempt to investigate the littering.” Id. at 371, 174 A.3d at 338. Instead, the Majority rules that she “abandoned consideration of the totality of the circumstances” by concluding that “ ‘the fact that Mr. Sizer ran, in and of itself, based on the particular scenario ... [was] not sufficient,’ ” to find that the officers had reasonable suspicion that Mr. Sizer was engaged in criminal activity. Id. at 371, 174 A.3d at 338 (Emphasis in original). The Majority uses this conclusion to evade the deficiencies in the State’s claims that the officers had reasonable suspicion to detain Mr. Sizer. The State relied heavily on Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), as well as our own similar precedent, for the proposition that unprovoked flight in a “high crime area”[1] provides sufficient reasonable suspicion to justify an investigatory detention in this case. The Majority rightfully appears skeptical of the evidence the State supplied that suggests that this incident took place in a “high crime” area, but avoids addressing the issue by deciding that the Circuit Court for Howard County erred in applying the totality of the circumstances analysis. The Majority concludes that upon a review of the factors before the hearing judge, the officers had reasonable suspicion to detain Mr. Sizer for a possible open container violation and improper disposal of a bottle regardless of whether or not he was in a high crime area. Reasonable suspicion requires a determination that, under the totality of the circumstances, officers had a “particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (emphasis added); see also Longshore v. State, 399 Md. 486, 507, 924 A.2d 1129 (2007). In evaluating the constitutionality of an investigatory detention, we consider “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The issue is, whether under the totality of the circumstances, officers had a reasonable articulable suspicion that Mr. Sizer was engaged in criminal activity that justified their decision to seize him, and whether that seizure was “reasonably related in scope” to the circumstances justifying that suspicion. Id. The tenor of the State’s arguments suggest that reviewing courts should simply accept the “high crime” designation when officers provide general information about some criminal activity in an area (whatever area that may be), and opine that the area is “high” or “higher” crime. Whether an activity occurs in a high crime area can inform a police officer’s analysis about the activity that is taking place. Bailey v. State, 412 Md. 349, 383-84, 987 A.2d 72 (2010). A suspect need not be connected to previous crimes in the area, Holt v. State, 435 Md. 443, 466, 78 A.3d 415 (2013), but the nature of the area is relevant to reasonable suspicion when the suspect’s activities appear to be the kind of criminal activity that is likely to be occurring there. A generalized description of an area as “high crime,” without a greater connection to the observed activities, does not support reasonable suspicion. See Bailey, 412 Md. at 384, 987 A.2d 72. Other Maryland cases addressing Terry stops in high crime areas demonstrate that the nexus between the nature of the area and the observed activities is significant in determining whether officers had reasonable suspicion. See Chase v. State, 449 Md. 283, 289, 144 A.3d 630 (2016) (detaining individuals for suspicion of drug trafficking based on behavior in area known for drug trafficking); Cox v. State, 161 Md.App. 654, 671-74, 871 A.2d 647 (2005) (individual suspected of drug dealing had been warned away from intersection known for heroin trafficking earlier, when officers saw him again, he fled, committing a traffic infraction); Wise v. State, 132 Md.App. 127, 134, 751 A.2d 24 (2000) (suspect’s actions in neighborhood known for drug trafficking coupled with flight after seeing officers justified investigatory detention). Federal precedent provides further support. In Wardlow, the suspect was in an area of Chicago “known for heavy narcotics trafficking” and the officers expected to encounter individuals who were involved in those activities. 528 U.S. at 124, 120 S.Ct. 673. Wardlow’s behavior and subsequent flight triggered the officer’s suspicion that he was engaged in drug trafficking. In United States v. Wright, 485 F.3d 45, 53-54 (1st Cir. 2007), relying on Wardlow and other circuits’ precedent, the First Circuit identified three specific factors relevant to the “high crime” designation, and the designation’s relationship to reasonable suspicion. First, “the nexus between the type of crime most prevalent or common in the area and the type of crime suspected in the instant case”; second, the “limited geographic boundaries of the area”; and third, “temporal proximity between evidence of heightened criminal activity and the date of the stop or search at issue ....” Id. See also United States v. Caruthers, 458 F.3d 459, 468 (6th Cir. 2006); United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005); United States v. Edmonds, 240 F.3d 55, 60 (D.C. Cir. 2001); United States v. Montero-Camargo, 208 F.3d 1122, 1138-39 (9th Cir. 2000) (en banc). Applying these factors, I conclude that the State failed to show that the Owen Brown Village Center is a high crime area—a conclusion the Majority seems poised to reach, but then abandons.[2] Increased calls for service[3] and concerned business owners do not permit a conclusion that an area is “high crime.” An ongoing series of robberies at unknown locations and times, as well as a single sighting of an individual with a handgun do not suffice absent greater specificity. Even assuming that these incidents could be sufficient for a finding that the area is “high crime,” there is no nexus between these crimes and the activity in this case, or between these crimes and Mr. Sizer.[4] For these reasons, I do not find sufficient evidence to support the State’s contention that Wardlow is dispositive precedent. The Majority’s determination that the hearing judge abandoned the totality of the circumstances appears to be a mischaraeterization of the hearing judge’s conclusions of law. The hearing judge concluded “the fact that Mr. Sizer ran, in and of itself, based on the particular scenario that’s being given here today, is not sufficient.” The Majority explains that this is erroneous because no single factor is dispositive in the analysis. Maj. Op. at 371, 174 A.3d at 338. It is evident, upon review of the record that the hearing judge did apply the totality of the circumstances analysis. The officers observed a loud group in a parking lot from 25 to 35 yards away, and the officers thought that some individuals in the group might be consuming alcohol.[5] The officers also testified that someone threw a bottle, but they did not know who threw it, or even where the bottle originated in the group. They approached to determine who threw the bottle. The State highlights these facts, as well as two others—that the group was in a “high crime area” and that only Mr. Sizer fled when the officers approached—to argue that the officers had sufficient reasonable suspicion to seize Mr. Sizer.[6] The hearing judge considered all of these factors in reaching her decision that the seizure was unreasonable.[7] She did not doubt what the officers had observed, but the officers never saw Mr. Sizer engaging in any of these activities. Thus, at the moment the officers reached the group, they had no reasonable articulable suspicion that Mr. Sizer was engaged in criminal activity. He was with a group of individuals, some of whom might have been engaging in misdemeanor activities.[8] The hearing judge decided that this “scenario,” combined with Mr. Sizer’s flight, could not provide a sufficiently particularized reasonable suspicion to detain him. The Majority notes that the State “implicitly concedes that the officers did not have a particularized suspicion to stop Mr. Sizer at the moment they approached the group.” Maj. Op. at 363, 174 A.3d at 334. It is unclear whether the Majority thinks that the officers were stopping the entire group under Terry, or whether the officers were merely accosting the group. The Majority reasons that “Sizer’s flight from the group as the officers approached to investigate probable crimes committed in their presence shifted their focus to Mr. Sizer, which could have reasonably heightened their suspicion that he was the individual responsible for throwing the bottle.” Id. at 372, 174 A.3d at 339. The Majority places too much weight on Mr. Sizer’s flight. Unprovoked flight is a factor in the totality of the circumstances analysis. See Wardlow, 528 U.S. at 125, 120 S.Ct. 673; Bost v. State, 406 Md. 341, 358, 958 A.2d 356 (2008); Collins v. State, 376 Md. 359, 372, 829 A.2d 992 (2003). Based on the evidence presented, it appears that the officers had a hunch that Mr. Sizer was engaged in criminal activity because he ran at their approach.[9] We do not accord weight to an “inchoate and unparticularized suspicion or ‘hunch[.]’ ” Terry, 392 U.S. at 27, 88 S.Ct. 1868. Officers may certainly investigate ambiguities, but they must still be able to articulate a particularized basis for suspicion that comports with constitutional standards. The Majority’s analysis is unpersuasive and accords the State too much credit. The Majority claims that Mr. Sizer “overlooks the significance of the officers’ decision to investigate based on the improper disposal of the bottle.” Maj. Op. at 373, 174 A.3d at 339. But under the Majority’s reasoning, and the State’s implied concession, there is no reason to suspect Mr. Sizer was littering without placing unwarranted weight on his flight. The officers never testified that they believed there was a connection between Mr. Sizer’s flight and the littering or the alcohol violations. Put simply, he ran, so they chased him. Although much of the evidence the hearing judge relied on was ambiguous, as the Majority points out, this is not to either the hearing judge’s or Mr. Sizer’s detriment. The State must demonstrate a sufficient factual basis for the stop. See Jeremy P., 197 Md.App. at 22, 11 A.3d 830. If the hearing judge resolved this issue based on ambiguous evidence, it is because the State failed to satisfy its burden. Any inferences from these ambiguities should be drawn in Mr. Sizer’s favor because the motion to suppress was granted. See Longshore, 399 Md. at 498, 924 A.2d 1129. Turning to the question of the use of a hard take-down, the Supreme Court in Terry explained that “[t]he manner in which [a] seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all.” 392 U.S. at 28, 88 S.Ct. 1868. The Supreme Court has held that claims that “law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other ‘seizure’ ” of an individual must be analyzed under the “objective reasonableness” standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment permits “some degree of physical coercion or threat thereof’ in making an investigatory stop. Id. at 396, 109 S.Ct. 1865. The “reasonableness” of a seizure depends both on when it occurred and how it is carried out. See id. at 395, 109 S.Ct. 1865 (citing Tennessee v. Garner, 471 U.S. 1, 7-8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Whether a seizure is reasonable “requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Id.; see also Cty. of Los Angeles v. Mendez, - U.S. -, 137 S.Ct. 1539, 1546, 198 L.Ed.2d 52 (2017). A court must consider “whether the officers’ actions are ‘objectively reasonable’ in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.” Graham, 490 U.S. at 397, 109 S.Ct. 1865. Under the totality of the circumstances, the officers’ conduct was not reasonable. The officers lacked a particularized basis to suspect Mr. Sizer of criminal activity. There was no reason to believe that he was a threat to officer safety at the time of the chase and tackle because he stated that he had a gun during the tackle.[10] The officers seized Mr. Sizer before they were aware that he armed. See California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Maryland permits warrantless arrests for individuals who have committed or attempted to commit a misdemeanor “in the presence of or within the view of the police officer.” Maryland Code (1957, 2008 Repl. Vol.), § 2-202(a) of the Criminal Procedure Article. If the officer has probable cause to believe that the misdemeanor is being committed in his presence or in his view, he may arrest any person whom the officer reasonably believes has committed the crime. Id. § 2-202(b). Assuming that throwing the bottle was littering, or that someone in the group was consuming alcohol, the officers did not know who committed these offenses. The officers could not reasonably believe it was Mr. Sizer when they testified that they had not observed anyone in particular doing those activities. See Parks v. State, 4 Md.App. 432, 434, 243 A.2d 645 (1968) (warrantless arrest for littering was unlawful when officers did not see arrestee littering and there was no evidence of a common criminal design to litter). Finally, the nature of the suspected offenses does not suggest that a hard take-down was reasonable. Our prior cases on the use of force in investigatory detentions have dealt with crimes that presented a threat to public safety, with identified suspects. See In re David S., 367 Md. 523, 539, 789 A.2d 607 (2002) (officers saw a suspect with what appeared to be a handgun); Lee v. State, 311 Md. 642, 661-67, 537 A.2d 235 (1988) (officers detained suspects in an armed robbery who had injured an individual and were believed to be armed); Cf. Longshore, 399 Md. at 517, 924 A.2d 1129. I am reluctant to extend our reasoning in those cases to minor misdemeanor offenses when the officer lacks particularized suspicion that the detained individual is engaged in criminal activity. Under the totality of the circumstances in this case, I conclude that it was unreasonable for the officers to chase and tackle Mr. Sizer. ATTENUATION Although I disagree with the Majority’s conclusion that this stop was constitutional, I concur in their alternative holding, that the officer’s unlawful conduct was attenuated by the discovery of the arrest warrant.[11] To determine whether attenuation applies, a reviewing court considers three factors first set forth in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); see also Miles v. State, 365 Md. 488, 522, 781 A.2d 787 (2001). First, we examine the “ ‘temporal proximity’ between the unconstitutional conduct and the discovery of the evidence to determine how closely the discovery of evidence followed the unconstitutional search.” Utah v. Strieff, - U.S. -, 186 S.Ct. 2056, 2062, 195 L.Ed.2d 400 (2016) (quoting Brown, 422 U.S. at 603, 95 S.Ct. 2254). Second, we examine the intervening circumstances. Third, we “examine ‘the purpose and flagrancy of the official misconduct.’ ” Id. (quoting Brown, 422 U.S. at 604, 95 S.Ct. 2254). Temporal Proximity The temporal proximity factor weighs against attenuation if there is no “substantial time” between the “unlawful act and when the evidence is obtained.” Id.; see also Cox v. State, 397 Md. 200, 218, 916 A.2d 311 (2007). The officers testified that the sequence of events happened very quickly. Mr. Sizer stated that he had a gun as he was being tackled, and the search took place almost immediately after the officers cuffed Mr. Sizer and discovered the warrant. Generally, an unlawful stop and near-contemporaneous discovery of evidence will not be a sufficient lapse in time to “attenuate the taint of a presumptively illegal stop .... ” Cox, 397 Md. at 218, 916 A.2d 311. Thus, the temporal proximity factor here favors rejecting attenuation because no substantial time elapsed. See Strieff, 136 S.Ct. at 2062; Cox, 397 Md. at 218, 916 A.2d 311. Intervening Circumstances “[A]n intervening circumstance is an event that breaks the causal connection between the unlawful conduct and the derivative evidence.” Ferguson v. State, 301 Md. 542, 551, 483 A.2d 1255 (1984). Even before Strieff,][12] we have found that discovery of a valid arrest warrant after an unconstitutional detention is an intervening circumstance that weighs in favor of attenuation. See Cox, 397 Md. at 219, 916 A.2d 311; Myers v. State, 395 Md. 261, 227-28, 909 A.2d 1048 (2006). The discovery of an arrest warrant that is “wholly independent of the illegal stop”[13] breaks the causal chain because the warrant compels the officer to arrest the suspect. Strieff, 136 S.Ct. at 2063. Corporal Zammillo was compelled to arrest Mr, Sizer when he recognized him from prior interactions and knew that he had an open warrant. See id. at 2062. Officer Schlossnagle became aware of the gun through Mr. Sizer’s statement during an unlawful seizure before Zammillo recognized Mr. Sizer and discovered the arrest warrant, however, officers searched the backpack and found the gun after the warrant discovery. The question is whether this fact affects the intervening circumstance factor such that it weighs against attenuation. In Cox, after detaining two individuals without reasonable suspicion, the officers learned that Cox had an outstanding warrant for failure to appear in court on drug charges and arrested him. 397 Md. at 205, 916 A.2d 311. After the arrest, the officers found marijuana on the ground where Cox had been sitting. Id. We concluded that the presence of the warrant favored attenuation because the valid arrest warrant gave officers probable cause to arrest Cox before they found the marijuana. Id. at 219, 916 A.2d 311. In Myers, an officer initiated a traffic stop and observed a screwdriver in plain view that could make pry marks consistent with those found at some recent burglaries. The officer learned that Myers had outstanding warrants from another jurisdiction and took him into custody. A search incident to arrest revealed further evidence of burglary. 395 Md. at 268-69, 909 A.2d 1048. We assumed the stop was invalid, but concluded that the arrest warrant “sufficiently attenuated” the tainted stop such that the exclusionary rule did not apply. Id. at 277-78, 909 A.2d 1048. As the Majority opinion notes, we determined in Myers that the timing was not “dispositive” because “there was an outstanding arrest warrant discovered between the initial stop and the subsequent search incident to arrest, even though some of the evidence was discovered shortly after the illegal stop.” Id. at 292, 909 A.2d 1048 (emphasis added). Mr. Sizer cites People v. Maggit, 319 Mich.App. 675, 903 N.W.2d 868, 2017 WL 2351500 (2017), suggesting that case supports rejecting attenuation here. In Maggit, the Michigan Court of Appeals paid careful attention to the timing of the seizure and the discovery of a warrant to determine whether intervening circumstances favored suppression. Id. at 881-82, 903 N.W.2d 868, at *10. The court pointed out that Strieff involved a “fact pattern[ ] of (1) invalid seizure; (2) discovery of a valid arrest warrant; and (3) search and discovery of contraband ....” Id. The court distinguished Maggit based on the difference in the fact pattern: “(1) invalid seizure; (2) search and discovery of contraband; and (3) discovery of a valid arrest warrant.” Id. The court determined that the warrant in that case was not an intervening act because it “had no effect on the actions taken by the police in this case, nor did it have any effect on the evidence that was recovered from the defendant.” Id. Here, the fact pattern diverges from both Strieff, Cox, and Maggit, but is consistent with Myers: (1) An invalid seizure and some evidence; (2) discovery of an arrest warrant; and (3) search and discovery of contraband. Like Myers, although some evidence was obtained before the discovery of the warrant, the gun was found after the discovery of the warrant and the arrest. Unlike in Maggit, the search was incident to a lawful arrest. In Maggit, the arrest itself was unlawful, despite the later discovery of a valid warrant. See 319 Mich.App. at 881-82, 903 N.W.2d 868, 2017 WL 2351500, at *10. I agree with the Majority that Myers sufficiently resolves the issue. The presence of a valid unrelated arrest warrant supports attenuation, even if some evidence is found before the arrest warrant. See 395 Md. at 292, 909 A.2d 1048. I reach this conclusion because there was no substantial lapse in time between the illegality and the intervening circumstance, and the officers had not taken any significant action based on Mr. Sizer’s statement, such as searching his bag. Thus, this factor weighs in favor of the State. The Purpose and Flagrancy of Police Misconduct This factor reflects the exclusionary rule’s goal of deterring police misconduct by “favoring exclusion only when the police conduct is most in need of deterrence—that is, when it is purposeful or flagrant.” Strieff, 136 S.Ct. at 2063. Flagrancy requires more severe police misconduct than the mere absence of proper cause for a seizure. Id. at 2064; see also Myers, 395 Md. at 293, 909 A.2d 1048 (officer’s conduct was not flagrant only because the stop was invalid). Here, the officers accosted the group after an unknown member of the group made an ill-advised decision to throw a bottle in the parking lot, and the officers suspected that some members of the group might be drinking. Although they lacked suspicion that Mr. Sizer had done anything, it was not unreasonable for the officers to approach the group. There is no evidence in the record of a pattern of systemic police misconduct by the Howard County Police Department. See Strieff, 136 S.Ct. at 2063; Maggit, 319 Mich.App. at 881-82, 903 N.W.2d 868 N.W.2d 868, 2017 WL 2351500, at *10. While the officers’ decision to chase and tackle Mr. Sizer may have been an error in judgment, given the lack of reasonable suspicion that he was engaged in criminal activity, absent further evidence of misconduct, I do not conclude their conduct was purposeful or flagrant. Thus, this factor weighs in favor of the State. The arrest warrant, therefore, sufficiently attenuated the illegality, and the evidence of the gun should have been admitted.[14] CONCLUSION I agree with the Majority that the evidence is admissible because the valid, unrelated arrest warrant sufficiently attenuated the unreasonable seizure. I do not agree, however, with the Majority’s conclusion that the seizure of Mr. Sizer was reasonable under the totality of the circumstances. I do not suggest officers should permit individuals suspected of committing crimes to escape. But at a suppression hearing, the State must demonstrate that the officers had a sufficient factual basis to stop a citizen—especially when that stop is a hard take-down. Grant, 449 Md. at 30, 141 A.3d 138; Jeremy P., 197 Md.App. at 22, 11 A.3d 830. They failed to do so. This Court should not shoulder that burden. Judge Hotten has authorized me to state that she joins this Concurring and Dissenting Opinion. . The term "high crime area” has never been defined in legal jurisprudence. See Andrew Guthrie Ferguson & Damien Bernache, The "High Crime Area” Question: Requiring Verifiable and Quantifiable Evidence for Fourth Amendment Reasonable Suspicion Analysis, 57 Am. U. L. Rev. 1587, 1590-91 (2008). . The Majority points out that the group was not in the Owen Brown Village Center, which the officers testified was a "high crime area.” The Majority also notes that the officers did not testify that the group’s behavior was “consistent with the nature of the crimes that led them to conclude that the Village Center was a high crime area.” The officers’ testimony did not connect the string of robberies or the suspected gun violation to die group. Maj. Op. at 371, 174 A.3d at 338. . Officer Schlossnagle admitted that increased calls for service are not necessarily indicative of criminal activity, but only demonstrate that someone called the police. . Corporal Zammillo’s testimony about the satellite office is not particularly persuasive in the “high crime” analysis. During cross-examination, he explained that there are five satellite offices at five villages in Columbia. Mr. Sizer points out that because there are ten villages in Columbia, half the villages have a satellite office. The presence of this office, absent further evidence, does not support a conclusion that Owen Brown Village is "high crime.” . The officers' testimony is vague regarding which, if any, individuals might have been committing alcohol violations, or indeed whether an alcohol violation was occurring. The officers testified that some of the individuals in the parking lot “appeared to be” drinking alcohol. Schlossnagle testified that "[tjhere were bottles that appeared to be alcohol bottles and cans ... [A]nd a brown bag, a—bottle in a bag ....” Zammillo testified that he saw “body language [that] was consistent with individuals that were consuming alcohol; hanging around, passing a bottle back and forth.” . Mr. Sizer was seized when the officers tackled him. See California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (seizure requires either physical force, or if no force, submission to authority). Terry stops are undisputedly seizures. See Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person.”). . In formulating the "scenario,” the hearing judge explained: The police testified today without embellishment. The Court found them to be truthful and credible. The issue for the Court, as I outlined it at the beginning, is the time-line. So as I understand it, and from the testimony of the officers, it’s that they’re there. They're in a darker less lit area. They see this group of individuals which includes the Defendant, Mr. Sizer. That the group appears to be loitering; that the group appears to be drinking alcohol, open containers, and that somebody of the group—they cannot be sure whether it was Mr. Sizer or not—threw a bottle. The police were concerned, understandably, and approached the group. They were in uniform. On their bright-blue jackets are their respective names and the word “Police”, and they verbally identified themselves as police. While they themselves had been in a darker area, the testimony was that there was sufficient lighting in the parking lot area to see the group. The issue before the Court is, when Mr. Sizer ran, was it reasonable for the police to run after him? [[Image here]] And although I can understand the heat of the moment, I can understand the high crime area, the fact that Mr. Sizer ran, in and of itself, based on the particular scenario that's being given here today, is not sufficient. . Littering is a misdemeanor. See Maryland Code (1957, 2012 Repl. Vol., 2016 Supp.), § 10-110 of the Criminal Law Article, On brief, and at argument, the State also suggested that officers could have reasonably suspected that Mr, Sizer was violating a Howard County Ordinance that prohibits possessing an open container, or consuming alcoholic beverages in posted areas. See Howard County, Maryland, Code of Ordinances § 8.700: Consumption and possession of alcoholic beverages in opened containers (2016). References to laws and ordinances do not provide a particularized basis for suspecting Mr. Sizer of wrongdoing, they only particularize the offense the officers thought might be occurring. . Mr. Sizer’s brief suggests that he may have run because he was startled, The officers approached out of darkness, and Officer Baker testified that the group first noticed the officers when they were five feet away from the group. The officers testified that they identified themselves as police during their approach, but they also described the group as “loud.” Based on this evidence, it is not unreasonable to draw an inference that Mr. Sizer’s flight may have not been entirely unprovoked. . There was some dispute during the hearing regarding precisely when Mr. Sizer said "I have a pistol,” and whether that statement occurred before or after Schlossnagle tackled him. The hearing judge also found that Mr. Sizer made the statement “in the process of Officer Schlossnagle taking him down ....” This factual finding was not clearly erroneous given the speed of events and the ambiguities in timing. See Raynor v. State, 440 Md. 71, 81, 99 A.3d 753 (2014). . I agree with the Majority that the independent source doctrine is not applicable. Because attenuation applies, there is no reason to reach this issue. . The Supreme Court applied Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) in its reasoning in Utah v. Strieff, — U.S. -, 136 S.Ct. 2056, 195 L.Ed.2d 400 (2016). The Court acknowledged that Segura applied the independent source doctrine, not attenuation, but concluded that the principle relating to a valid arrest warrant was applicable in attenuation. Strieff, 136 S.Ct. at 2062. . In Taylor v. Alabama, 457 U.S. 687, 692, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), the Supreme Court determined that an arrest warrant filed after an unconstitutional arrest did not serve as an intervening circumstance because the officers secured the warrant using information obtained from the illegality. . When Mr. Sizer was being processed for detention at Booking, a corrections officer located a bag of pills in Mr. Sizer's sock. Schlossna-gle referred to this as a "search incident to detention” as a matter of "protocol.” This appears to be an inventory search, which is a well-recognized exception to the Fourth Amendment warrant requirement. See Illinois v. Lafayette, 462 U.S. 640, 645-47, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).